**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DOUGLAS NORWOOD, III, LEEANN**
**NORWOOD, D.N., Minor Son of Plaintiffs**
**NORWOOD, PAUL ORLOWSKI,**
**and LENA ORLOWSKI,**

                                        **Plaintiffs,**

        **vs.**                                         **3:12-CV-1025**
                                                        **(MAD/DEP)**

**MICHAEL SALVATORE, Individually**
**and in his capacity as TOWN OF HANCOCK**
**CODE ENFORCEMENT OFFICER and**
**TOWN OF HANCOCK,**

                                        **Defendants.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

OFFICE OF JOHN V. JANUSAS, ESQ.          John V. Janusas, Esq.
26 Court Street
Suite 2511
Brooklyn, NY 11242
_Attorney for Plaintiffs_

MACKENZIE, HUGHES LAW FIRM               Jeffrey D. Brown, Esq.
101 South Salina Street
PO Box 4967
Syracuse, NY 13221-4967
_Attorneys for Defendants_

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

        The within action was commenced by unrelated property owners in the Town of Hancock

who claim that they applied for certificates of occupancy, building permits and other

certificates/permits from defendants.  Plaintiffs commenced this action pursuant to 42 U.S.C. §

1983 alleging that defendants violated of their Fourteenth Amendment rights to substantive due

process and equal protection. The Norwood plaintiffs also assert a cause of action for declaratory

relief seeking a building permit and certificate of occupancy. The Orlowski plaintiffs also assert

malicious prosecution claims. Presently before the Court is defendants' motion to dismiss

plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(5) and 12(b)(6). (Dkt. No. 8). Plaintiffs have

opposed the motion. (Dkt. No. 12).

## COMPLAINT[1]

**The Norwood Plaintiffs**

In 1988, plaintiffs Douglas Norwood, III, Leeann Norwood and D.N. ("the Norwood

plaintiffs") purchased real property, with a home, in the Town of Hancock. In May 2009, the

Norwood plaintiffs' home on said property was completely destroyed as a result of a fire. In July

2009, the Norwood plaintiffs contacted defendant Michael Salvatore ("Salvatore"), the Town of

Hancock Code Enforcement Officer ("CEO"), to apply for a building permit on said property.

Salvatore stated that he would visit the premises and then advise the Norwood plaintiffs how to

proceed. During the visit, Salvatore told the Norwood plaintiffs that they needed to perform

"prep" work before a building permit could be issued. Salvatore demanded a set of plans for the

proposed work, an elevation certificate and engineering plans. Salvatore also directed the

Norwood plaintiffs to install concrete footings and piers with steel reinforcements. After the piers

were installed, Norwood plaintiffs installed the floor plan to stabilize the concrete piers.

Salvatore then insisted upon the installation of flooding vents, which required alterations to some

previous work. The Norwood plaintiffs completed all the aforementioned work pursuant to

---

[1] The background information is taken from plaintiffs' complaint and is presumed true for the purposes of
this motion. These are not findings of fact by the Court.

Salvatore's direction and repeatedly asked for the building permit. Salvatore stated that the permit would be issued when "prep" work was completed.

On September 15, 2009, Salvatore arrived at the property for one of many inspections and issued additional demands for "prep" work. The Norwood plaintiffs claim that Salvatore raised his voice, in the presence of their fourteen year old son, and allegedly stated, "you really do not want to rebuild at this location, because Angelo Valenti is going to have niggers and spics moving across the street". The Norwood plaintiffs contend that Salvatore also yelled, "niggers and spics will be using all the units that Angelo Valenti was planning to install".

In September 2009, after all of the "prep" work was complete, Salvatore told the Norwood plaintiffs to halt construction and stated that he would not issue a building permit or certificate of occupancy.

**Orlowski Plaintiffs**

In March 2009, Lena Orlowski contacted Salvatore, via telephone, about moving a manufactured home from one location on their property to another. The Orlowski plaintiffs initiated contact to determine whether a building permit from the Town of Hancock was necessary to relocate the home. Salvatore told Orlowski that if the home was being relocated without being re-occupied or connected to utilities then no building permit would be necessary. A few months later, the Orlowski plaintiffs relocated the home and Salvatore approved the new location.

In April 2010, the Orlowski plaintiffs received a letter from Salvatore warning that the relocation of the home violated the Town of Hancock Local Law #1, Subdivision A, "Building without a Permit".[2] Salvatore allegedly threatened to fine the Orlowski plaintiffs $1,000.00 per

---

[2] The letter was not annexed to plaintiffs' complaint.

day if the home was not moved. Upon receiving the correspondence, the Orlowski plaintiffs confronted Salvatore at the Town of Hancock Building Department and demanded an explanation. Salvatore responded by saying, "I don't remember speaking to you by phone" and asked "do you have anything in writing". The Orlowski plaintiffs indicated they did not and Salvatore responded, "then that's too bad".

In April 2010, the Orlowski plaintiffs received an appearance ticket charging them with Building without a Permit. During a September 2010 court appearance, The Orlowski plaintiffs indicated to Salvatore that the same requirements did not apply to their neighbor, Joel May, who installed a manufactured home without a building permit in 2008, connected it to utilities and has occupied it ever since without a certificate of occupancy. Salvatore did not respond. The Orlowski plaintiffs refused to pay the $600 fine and requested a trial date. On October 25, 2010, the Orlowski plaintiffs were found not guilty after trial.

On November 16, 2010, Orlowski plaintiffs again received a letter from Salavatore stating that the relocation of the home constituted a violation of the Town of Hancock Local Law #1 and threatened to fine Orlowski plaintiffs up to $1,000.00 per day.[3] The Orlowski plaintiffs dismantled and disposed of the manufactured home.

On June 22, 2012, plaintiffs filed the within action and asserted claims against Salvatore in both his individual and official capacities. On October 2, 2012, plaintiffs served the complaint on the Town Clerk at Town Hall, Melody Oliver, at 661 West Main Street, in the Village of Hancock. On October 23, 2012, defendants filed the within motion to dismiss plaintiffs's complaint, in its entirety based upon insufficient service or, in the alternative, for failure to state a claim.

---

[3] The letter is not part of the record herein.

# DISCUSSION

## I.     DEFENDANTS' MOTION TO DISMISS UNDER 12(B)(5)

When a defendant moves to dismiss the complaint under Rules 12(b)(5) and 12(b)(6), the court must address the issue of proper service before the alleged failure to state a claim. *Schwasnick v. Fields*, 2010 WL 2679935, at *2 (E.D.N.Y. 2010).  In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, the court "must look to matters outside the complaint to determine whether it has jurisdiction." *Allen v. Nassau Cnty. Executive Office*, 2011 WL 1061019, at *4 (E.D.N.Y. 2011).  "[W]hen a defendant moves to dismiss under rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Id.* (citations omitted).

On June 22, 2012, plaintiffs filed the complaint in this Court.  (Dkt. No. 1).  On October 18, 2012, plaintiffs filed Proof of Service with this Court indicating that the summons for the Town of Hancock and Salvatore had been served upon Melody Oliver, Town Clerk for the Town of Hancock on October 2, 2012. (Dkt. No. 7).  Defendants move to dismiss plaintiffs' complaint arguing that Salvatore and the Town of Hancock were not timely served within 60 days of the filing of the complaint, in accordance with this Court's Local Rules.  In addition, defendant Salvatore argues that service was insufficient because he did not receive a mailed copy of the complaint. Plaintiffs do not offer any evidence or argument in opposition but request that, should the Court agree with defendants, that plaintiffs be granted additional time to re-serve defendants. *See* Dkt. No. 12, p. 5.

## A.     Town of Hancock

Rule 4(m) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court-on motion on its own after notice to the plaintiff-must

> dismiss the action without prejudice against that defendant or order
> that service be made within a specified time. But if the plaintiff shows
> good cause for the failure, the court must extend the time for service
> for an appropriate period.

Fed.R.Civ.P. 4(m).

Local Rule 4.1(b) requires "service of process upon all defendants within sixty (60) days of the filing of the complaint. This expedited service is necessary to ensure adequate time for pretrial discovery and motion practice. In no event shall service of process be completed after the time specified in Fed.R.Civ.P. 4." N.D.N.Y. L.R. 4.1(b); *see also New York State Teamsters Council Health and Hosp. Fund v. C & D Specialized Transp., Inc.*, 1995 WL 79176, at *1 (N.D.N.Y.1995) (Local Rule 4.1(b) requires service of process preferably within 60 days from the date the complaint is filed with the clerk of the court, but in any case within the time allowed by Fed.R.Civ.P. 4).

Here, the Town of Hancock was served, via the Town Clerk, on October 2, 2012. While this was not within the 60 day time period set forth in Local Rule 4.1(b), service was effectuated within 120 days as provided in Fed. R. Civ. P. 4(m). Defendants do not claim that Melody Oliver was not authorized to accept service on behalf of the Town. While plaintiffs failed to complete service within 60 days after filing the complaint, in violation of the local rules, plaintiffs completed service within 120 days of when the complaint was filed and established personal jurisdiction over the Town of Hancock. *See Edsell v. Indep. Freightway, Inc.*, 1995 WL 375827, at *3 (N.D.N.Y. 1995). Accordingly, defendants' motion to dismiss the complaint against the Town of Hancock based upon insufficient service is denied.

**B.    Salvatore** [4]

---

[4] Defendant does not specify whether he seeks dismissal of all claims, in both his individual and official capacity, based upon lack of personal jurisdiction. However, the Court will assume the motion applies to all claims asserted against Salvatore.

### 1. Official Capacity

Service of process upon a municipal office is governed by Federal Rule of Civil Procedure 4(j)(2) which states that service may be completed by: "(A) delivering a copy of the summons and the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed.R.Civ.P. 4(j)(2).

C.P.L.R. § 307(2), provides that:

> Personal service on a state officer sued solely in an official capacity or state agency, which shall be required to obtain personal jurisdiction over such an officer or agency, shall be made by 1) delivering the summons to such officer or to the chief executive officer of such agency or to a person designated by such chief executive officer to receive service, or (2) by mailing the summons by certified mail, return receipt requested, to such officer or to the chief executive officer of such agency, and by personal service upon the state in the manner provided by subdivision one of this section.

Service on a town board or town supervisor is sufficient where the pleadings are left with the town clerk. *Schwasnick,* 2010 WL 2679935, at *3 (citing *Contento v. Veteran*, 1981 LEXIS 13478, at *3 (S.D.N.Y. 1981) (finding that serving the town clerk on behalf of town board members and the town supervisor in their personal capacities was only insufficient because the plaintiff did not mail a copy to the defendant after personal service)); *see also Wendell v. N.Y. State Ins. Dep't*, 2007 LEXIS 62314 * 10–12 (E.D.N.Y. 2007) (sufficiency of service on Superintendent in his individual capacity determined under Rule 4(e) and C.P.L. R. 308, in his official capacity under Rule 4(j)(2) and C.P.L.R. 307).

Based upon the record herein, service upon Melody Oliver, on behalf of Salvatore in his official capacity, is sufficient.

### 2. Individual Capacity

Service of process upon an individual within a judicial district of the United States is governed by Rule 4(e) which states that service may be completed by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:
> (A) delivering a copy of the summons and of the complaint to the individual personally;
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> © delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed.R.Civ.P. 4(e).

Pursuant to N.Y.C.P.L.R. § 308(2), service of process on an individual is sufficient where the summons is left with a "person of suitable age and discretion at the actual place of business" and mailing a copy to the same. Serving the Town Clerk on behalf of the Town Supervisor in his individual capacity is insufficient if the plaintiff does not mail copy after personal service. *See Allen*, 2011 WL 1061019, at *4 (collecting cases).

Without evidence indicating that the summons and complaint were also mailed to Salvatore, the claims against Salvatore, in his individual capacity, must be dismissed. The record contains no proof of service indicating that Salvatore was personally served the summons and complaint within the 120–day statutory window of Rule 4(m). Moreover, there is no proof of mailing. Therefore, plaintiffs claims against Salvatore, in his individual capacity, must be dismissed. *See Polite v. Town of Clarkstown*, 60 F.Supp.2d 214, 216 (S.D.N.Y. 1999).

## C.    Request for Additional Time

Good cause to excuse deficient service generally requires proof of "exceptional circumstances" that were "beyond [the plaintiff's] control." *Weston Funding, LLC v. Consorcio G*

*Grupo Dina, S.A. de C.V.*, 451 F.Supp.2d 585, 591 (S.D.N.Y. 2006). In order to establish good cause for an extension of time for service a plaintiff must show "reasonably diligent efforts" to serve defendants within the allotted time frame. *Forte v. Lutheran Augustana Extended Care and Rehab. Ctr.*, 2009 WL 4722325, at *3 (E.D.N.Y. 2009) (citations omitted).

In this matter, plaintiffs have failed to establish set forth any argument to establish "good cause" with respect to the efforts to serve Salvatore as an individual. Plaintiffs allege that their agent was "told by Melody Oliver that she was authorized to accept service". There is no affidavit in the record from the process server attesting to this conversation. And even so, plaintiffs have not explained their failure to comply with § 308 or their failure to make additional efforts to serve Salvatore in his individual capacity. Thus, plaintiffs' request for an extension of time to re-serve Salvatore is denied.

## II.   DEFENDANTS' MOTION TO DISMISS UNDER 12(B)(6)

### A.   STANDARD

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief and pleadings without considering the substantive merits of the case. *Global Network Commc'ns v. City of New York*, 458 F. 3d 150, 155 (2d Cir. 2006); *Patane v. Clark*, 508 F. 3d 106, 111–12 (2d Cir. 2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F. 3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself" unless all parties are given a reasonable

opportunity to submit extrinsic evidence. *Faulkner v. Beer*, 463 F. 3d 130, 134 (2d Cir. 2006). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein. *Robinson v. Town of Kent, N.Y.*, No. 11 Civ. 2875, 2012 WL 3024766, at *3-4 (S.D.N.Y. 2012) (citing *Roth v. Jennings*, 489 F. 3d 499, 509 (2d Cir. 2007)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a) (2), with sufficient facts "to 'sho[w] that the pleader is entitled to relief[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the [ ] complaint must be dismissed[.]" *Id.* at 570.

The Second Circuit has held that, on a motion to dismiss, a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or  . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Tech. Inc.*, 987 F.2d 142, 150 (2d Cir.1993). The Second Circuit has clarified, however, that "[b]ecause this

standard has been misinterpreted on occasion, we reiterate . . . that a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) (citation and footnote omitted).[5]

## B.    Substantive Due Process Claims

The Fourteenth Amendment provides, in relevant part, that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In order to demonstrate a violation of either substantive or procedural due process rights, the plaintiff must first demonstrate the possession of a federally protected property right to the relief sought. *Puckett v. City of Glen Cove*, 631 F.Supp.2d 226, 236 (E.D.N.Y.2009) (citing *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir.1999)).  To establish a substantive due process violation, a plaintiff must demonstrate that: (1) there is a valid property interest; and (2) defendants infringed on that property right in an arbitrary or irrational manner. *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 784 (2d Cir.2007).

Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972) (holding that the plaintiff must have more than a unilateral expectation; the plaintiff must have a legitimate claim of entitlement to the benefit).  "In order for an interest in a particular land-use benefit to qualify as a property interest

---

[5] At this early juncture, the Court declines to convert this motion to dismiss to one for summary judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure. *See, e.g., Global Network Commc'ns, Inc.*, 458 F.3d 150, 155 (2d Cir. 2006) (holding that "[t]he conversion requirement of Rule 12(b) ... deters trial courts from engaging in factfinding when ruling on a motion to dismiss and ensures that when a trial judge considers evidence [outside] the complaint, a plaintiff will have an opportunity to contest defendant's relied-upon evidence by submitting material that controverts it" (citations omitted)).

for the purposes of the ... due process clause[,] a landowner must show a 'clear entitlement' to that benefit." *Natale v. Town of Ridgefield*, 170 F.3d 258, 263-64 (2d Cir.1999). "This inquiry stems from the view that a property interest can sometimes exist in what is sought—in addition to the property interest that exists in what is owned—provided there is a 'legitimate claim of entitlement' to the benefit in question." *Zahra v. Town of Southold*, 48 F.3d 674, 679–80 (2d Cir.1995.

"[I]n order to establish a federally protectable property interest in a state or local permit for which a plaintiff has applied, the plaintiff must show that, at the time the permit was denied, there was no uncertainty regarding his entitlement to it under applicable state or local law, and the issuing authority had no discretion to withhold it in his particular case." *See id.* at 263 n. 1. "The analysis focuses on the extent to which the deciding authority may exercise discretion in arriving at a decision, rather than on an estimate of the probability that the authority will make a specific decision. *Zahra*, 48 F.3d at 679–80; *see also Walz v. Town of Smithtown*, 46 F.3d 162, 168 (2d Cir.1995) (homeowner had property interest in an excavation permit because superintendent of highways had no discretion to decline to issue it if the application stated the nature, location, extent and purpose of the proposed excavations).

Defendants argue that the denial of an application for permission to develop property does not implicate a vested property interest if the government has the authority to grant or deny the application. Defendants claim that Local Law #1 affords the Code Enforcement Officer discretion in deciding whether to issue building permits. Defendants further argue that even assuming plaintiffs properly plead a vested property interest, plaintiffs' substantive due process claims are subject to dismissal because the complaint does not allege egregious and arbitrary

conduct.  Defendants set forth different arguments in support of dismissal of Norwoods' and

Orlowskis' portions of the complaint.

**1.      Local Law #1**

The relevant law in this matter is Local Law #1 formally entitled, "A Local Law Providing

for the Administration and Enforcement of the New York State Uniform Fire Prevention and

Building Code".  The relevant portions provide:

> Section 3.  Code Enforcement Officer and Inspectors
>
> (a)      The office of Code Enforcement Officer is hereby created.
> The Code Enforcement Officer shall administer and enforce all
> the provisions of the Uniform Code, the Energy Code and this
> local law.  The Code Enforcement Officer shall have the
> following powers and duties:
>
> (1) to receive, review and approve or disapprove applications
> for Building Permits [. . . ]
>
> Section 4.
>
> (a)      Building Permits Required.  Except as otherwise provided in
> subdivision (b) of this section, a Building Permit shall be
> required for any work which  must conform to the Uniform
> Code and/or the Energy Code, including, but not limited to,
> the construction, enlargement, improvement, removal,
> relocation or demolition of any building or structure or any
> portion thereof, and the installation of a solid fuel burning
> heating appliance, chimney or flue in any dwelling unit.  No
> person shall commence any work for which a Building Permit
> is required without first having obtained a Building Permit
> from the Code Enforcement Officer.
>
> (f)      Issuance of Building Permits.  An application for a Building
> Permit shall be examined to ascertain whether the proposed
> work is in compliance with the applicable requirements of the
> Uniform Code and Energy Code.  The Code Enforcement
> Officer shall issue a Building Permit if the proposed work is
> in compliance with the applicable requirements of the Uniform
> Code and Energy Code.

**2.      Norwood Plaintiffs**

The Norwood plaintiffs argue that Salvatore directed them to expend monies before even accepting the application for the building permit. The Norwood plaintiffs argue that this demand is in contravention of Local Law #1 because the CEO is not empowered with the authority to refuse to accept the application for a permit. In response, defendants argue that it is "indisputable that on November 24, 2008, plaintiffs Norwood submitted a signed building permit application to the Town and paid the required fee".[6] Defendants claim that upon receipt of that application, Salvatore had broad discretion to review and approve or disapprove the application.

In a case involving a similar code provision, the district court in the Eastern District, held that the plaintiff sufficiently plead a property interest in obtaining a building permit. In *Hampton Bays Connections, Inc. v. Duffy*, 127 F.Supp.2d 364, 378 (E.D.N.Y. 2001), the plaintiffs claimed that the defendants deprived them of their substantive due process rights by arbitrarily denying land use permits including an application for a building permit for the construction of a McDonald's. The applicable code provided, "[a]ny person wishing to construct a building must obtain a building permit from the Building Inspector". The Court cited to the relevant portions of the Town Code:

> the Town Code does state that after receiving the application, the Building Inspector "shall examine the premises for which" the application has been received "for the purpose of ensuring compliance with laws, ordinances and regulations governing building construction", shall examine the application, as well as the plans, specifications and documents filed therewith, shall refer the application to the Town Director of Natural Resources, who will determine whether an additional permit is necessary for construction in a Wetlands area, and shall issue a building permit upon approval of the application. If the application, together with plans, specifications and other documents filed therewith, describes proposed work which

---

[6] Defendants annexed a copy of the alleged building permit application to the reply papers. The application has not been properly authenticated.

> does not conform to all of the requirements of the applicable building
> regulations, the building official shall disapprove the same.

*Id*. at 379 (internal citations omitted).

The Court found that, "[t]he Town Code does not explicitly set forth whether the Building Inspector must approve certain applications, whether he may deny an application, or the circumstances under which the Building Inspector will approve or deny an application." *Id*.

The Court held:

> Given these provisions of the Town Code, the Court finds that the Building Inspector has very little discretion when deciding whether a permit should issue. Rather, the Town Code indicates that if the application meets all relevant regulations and ordinances, then the Building Inspector shall approve the application and issue the permit.

The Court acknowledge that, "later in the litigation, it may become clear that the Building Inspector does exercise his discretion when he applies the relevant building ordinances and regulations to a particular application". *Id*. However, the Court concluded, "at this early stage in the litigation, without information regarding the types of ordinances and regulations that are applicable to this case and the manner in which they are examined, the Court finds that the Building Inspector does not retain sufficient discretion to defeat the plaintiffs' substantive due process claim." *Id*. (citing *inter alia RRI Realty Corp*. *v. Inc. Vill. of Southampton*, 870 F.2d 911, 918 (2d Cir. 1985)).

Viewing the evidence in a light most favorable to plaintiff, as the Court must do on a motion to dismiss, the Court finds that the Local Law does not provide the CEO with the discretion to direct that "prep" work must be performed prior to the issuance of a building permit. Moreover, pursuant to Section 4(f), the CEO is not vested with broad discretionary authority to grant or deny a permit or application.  Section (f) clearly provides that a permit shall be issued if the proposed work is in compliance with the applicable codes.  Here, the record does not contain

any information relevant to the issue of whether Norwood plaintiffs' application or proposed work complied with the Uniform or Energy Code.

In cases where courts have found that the plaintiff does not possess a property interest in a permit, those cases involved distinguishable codes and regulations that provided the governmental body with broad discretion over whether a permit was granted. *See A.B.C. Home Furnishings, Inc. v. Town of East Hampton,* 947 F.Supp. 635, 645 (E.D.N.Y. 1996) (both the Town Code, and the permit application expressly provide that the permit " may" be revoked under certain circumstances and according to the permit application signed by the plaintiff, without notice or a hearing, providing the defendants with sufficient discretion in the determination as to whether to revoke a permit to defeat ABC's claim of a property interest); *see also Application/Action of 89 JPS, L.L.C. v. Joint Vill. of Lake Placid and Town of N. Elba Review Bd.,* 2011 WL 4344020, at *15 (N.D.N.Y. 2011) (pursuant to the Land Use Code at issue, the defendant had the discretion to "approve, approve with stipulated conditions, modification or disapprove any application" presented); *see also Quick Cash of Westchester Ave. LLC v. Vill. of Port Chester,* 2013 WL 135216, at *11 (S.D.N.Y. 2013) (the plain language of the statute gives discretion to the mayor or local licensing authority to grant the license "as he shall deem proper," and to limit licenses to those who meet the standard of "good character."). In this matter, Local Law #1 does not contain such broad discretionary language.

The Court has reviewed the cases cited by defendants in support of the motion to dismiss and notes that those cases involved motions for summary judgment or motions after a jury trial. *See RRI*, 870 F.2d 911; *see also Tomlins v. Vill. of Wappinger Falls*, 812 F.Supp.2d 357, 368 (S.D.N.Y. 2001). Applying *Hampton Bay* to the facts at hand, at this stage of the litigation, the Norwood plaintiffs have adequately plead a property interest in the building permit.

To meet the second prong, plaintiff must establish that the government action transgresses "the outer limit" of legitimate government action and that the officials actions were "shocking, abusive, capricious or arbitrary". *Cathedral Church of the Intercessor v. Inc. Vill. of Malverne*, 353 F.Supp.2d 375, 385 (E.D.N.Y.2005).

Here, plaintiffs allege that Salvatore willfully, maliciously, selectively, wrongfully and intentionally denied them the ability to rebuild their home. Plaintiffs assert that defendants acted "in an arbitrary and irrational manner" and issued "onerous and unreasonable demands" directing plaintiffs to "perform unnecessary work, which wrongfully depleted the funds that were available to plaintiffs to complete the reconstruction of their home". Plaintiffs contend that the demands were made for the purposes of "supporting a racist agenda and 'de facto' zoning scheme designed to exclude minorities from residing in the Town of Hancock".

Taking all of the plaintiffs' allegations together and viewing them in the light most favorable to the plaintiff, the Court finds that the Norwood plaintiffs have sufficiently stated an arbitrary denial and a substantive due process claim with respect to the denial of the building permit.

### 3.  Orlowski Plaintiffs

The Orlowski plaintiffs claim that they "clearly had a property interest in their manufactured home". Defendants argue that the issue is not whether they had a property interest in the manufactured home, but rather, whether they had a property interest in the location of the home.

While not discussed by either party, the ripeness doctrine precludes the Orlowski plaintiffs from seeking review in this Court. Land use challenges, whether pursued as a takings claim under the Fifth Amendment or as violations of equal protection or due process, are subject to the

ripeness requirement articulated in *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985), which states that a land use challenge is not ripe for judicial review until the government entity charged with implementing the relevant regulations has reached a "final decision" regarding their application to the property at issue. *Lost Trail LLC v. Town of Weston,* 289 F. App'x 443, 444 (2d Cir. 2008). Where there has been no final, definitive decision alleged either in the complaint or in plaintiffs' opposition papers that prohibited plaintiffs from developing and using the property, there is no constitutional violation. *See Grossi v. City of New York,* 2009 WL 4456307, at *5 (E.D.N.Y. 2009) (the plaintiff failed to complete the paperwork and file the application with the appropriate offices) (citing *Goldfine v. Kelly*, 80 F.Supp.2d 153, 160 (S.D.N.Y. 2000) ("Informal efforts to gain approval for land development are insufficient, by themselves, to constitute final government action.")).

In this matter, the Orlowski plaintiffs do not allege that they applied for a building permit to move their home, nor do they allege that they were denied the right to file any such application. At best, the Orlowski plaintiffs "informally" discussed whether they needed to apply for a permit with Salvatore. Defendants were not presented with an application and thus, made no decision regarding any building permit application. Consequently, the Orlowski plaintiffs claims are not ripe for review. *See Homefront Org., Inc. v. Motz,* 570 F.Supp.2d 398, 406–11 (E.D.N.Y. 2008) (finding claims not ripe for review when "plaintiffs cannot even argue that they made, and were denied, a meaningful application").[7] Defendants' motion to dismiss the Orlowski plaintiffs' substantive due process claims is granted.

## C.    Equal Protection Claims

---

[7] As the Court has found that the Orlowski plaintiffs' substantive due process claims are not ripe for review, the Court takes no position on whether the Orlowski plaintiffs possessed a vested property right or whether defendants' actions were egregious and/or arbitrary.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To prevail on an equal protection claim based on a theory of selective enforcement, plaintiffs must show both (1) that they were treated differently from other similarly situated businesses and (2) that "such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Cine SK8, Inc.*, 507 F.3d at 790. Where plaintiffs merely alleged less favorable treatment than "similarly situated", plaintiffs fail to state viable equal protection claim. *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010). In order to prevail, plaintiffs must allege facts plausibly indicating that the defendants would have enforced similar regulations when faced with the request of another resident whose situation was similar to the plaintiffs. *Nemeth v. Vill. of Hancock*, 2011 WL 56063, at *6 (N.D.N.Y. 2011). At the motion to dismiss stage, a court must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated. Thus, "[w]ell-pled facts showing that the plaintiff has been treated differently from others similarly situated remains an essential component of such a claim [and] [c]onclusory allegations of selective treatment are insufficient to state an equal protection claim." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F.Supp.2d 679, 698 (S.D.N.Y. 2011).

## 1. Norwood plaintiffs

Defendants argue that plaintiffs complaint fails to allege an equal protection claim because they failed to plead that they were treated differently from similarly situated individuals.

Defendants claim that the Norwood plaintiffs failed to identify any such similarly situated individual and only identified Joel May in response to the within motion. Moreover, defendants claim that even assuming that plaintiffs' allegations are deemed true as to May, plaintiffs fail to allege a sufficient degree of similarity to sustain a cause of action.

In the complaint, the Norwood plaintiffs allege that they have been deprived of equal protection:

> Compared with other similar situations involving other property owners in the Town of Hancock, plaintiffs Norwood have been adversely selectively treated.

The Norwood plaintiffs' portion of the complaint does not refer to Joel May. Because "[t]he totality of [p]laintiffs' allegations regarding[their] Equal Protection claim is a conclusory assertion, without any detail", the claim is subject to dismissal. *See Dellutri v. Vill. of Elmsford*, 2012 WL 4473268, at *15 (S.D.N.Y. 2012) (the plaintiff alleged that the defendant differed in its "treatment to other similarly situated property owners."). In plaintiffs' opposition to the within motion, counsel states, "[p]laintiffs Norwood were treated differently from the Mays, who are similarly situated in that they won property in the same local jurisdiction". Even assuming the Court accepted the assertions regarding Mr. May contained in the Norwood plaintiffs' opposition to this motion, plaintiffs allegations, are insufficient. Plaintiffs do not allege Joel May or the Mays applied for, and were denied, a building permit, under similar circumstances. Possible comparators for the treatment alleged by the plaintiffs herein may be other residents who applied for permits and whose complaints were treated differently, but the Norwood plaintiffs do not identify any such people or allege their existence. *See Caldarola v. Town of Smithtown*, 2010 WL 6442698, at *9 (E.D.N.Y. 2010). The Norwood plaintiffs fail to allege that defendants permitted other landowners with substantially similar properties to develop their land without the need for

"prep work" prior to receiving a building permit. Plaintiffs' conclusory statements that defendants acted maliciously and with an intent to harm plaintiffs fail as a matter of law. *See Grossi*, 2009 WL 4456307, at *9.

Based upon the complaint, even viewing the evidence in a light most favorable to the Norwood plaintiffs, the Court finds that the Norwood plaintiffs have failed to sufficiently allege that they were similarly situated to any property owner.

### 2. Orlowski plaintiffs

In the complaint, the Orlowski plaintiffs allege:

> At this Court appearance, the plaintiffs Orlowski indicated to defendant Salvatore that the same onerous requirements did not apply to the next-door neighbor of the plaintiffs, Joel May, who installed a manufactured home without a permit in 2008, connected it to utilities without a building permit, and has occupied it since then without a certificate of occupancy.
>
>        *       *       *
>
> Compared with other similar situations involving other property owners in the Town of Hancock, plaintiffs Orlowski have been adversely selectively treated.

Assuming the allegations in the complaint as true, the Court finds that the Orlowski plaintiffs have sufficiently plead that they were similarly situated to May. However, upon review of the complaint, the Court finds that plaintiffs have failed to establish the second element necessary for an equal protection claim. Plaintiffs' allegations with respect to "malicious or bad faith intent to injure" are wholly conclusory. Plaintiffs allege:

> As a result of the actions of defendant Salvatore in falsely indicating that it was proper for plaintiffs Orlowski to relocate their manufactured home, and then issuing false violations contrary to his specific directions, and willfully, maliciously, selectively, wrongfully and intentionally prosecuting plaintiffs Orlowski in an effort to prevent them from utilizing their manufactured home, in selectively prosecuting plaintiffs Orlowski for relocating a manufactured home while allowing their next door neighbor Joel may to do so openly and

without sanction, defendants have deprived plaintiffs Orlowski of a substantial property interest.

*See* Pl. Cmplt at ¶ 17.

However, plaintiffs fail to explain Salvatore's motive. *See Laidlaw Energy and Envtl., Inc. v. Town of Ellicottville, New York*, 2011 WL 4954881, at *11 (W.D.N.Y.2011) (the plaintiff's complaint was filled with allegations regarding the defendant's illicit motives but an economic interest did not equate to malicious motives nor were the allegations compatible with an intention to injure the plaintiff). Without more than mere conclusory allegations, this does not suffice to establish an intent to harm plaintiffs.

### 3. Leave to Amend

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a pleading shall be freely given when justice so requires. *See Livingston v. Piskor*, 215 F.R.D. 84, 85 (W.D.N.Y. 2003). "Absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In their opposition to defendants' motion, plaintiffs seek leave to amend the complaint. *See* Dkt. No. 12, p. 14. Plaintiffs did not file a cross motion nor did they file a proposed amended complaint. "While the Court is skeptical that plaintiffs can cure the deficiencies, the Court finds it would not be futile to permit plaintiffs the opportunity to amend other portions of their pleading." *MacPherson v. Town of Southampton*, 738 F.Supp.2d 353, 375 (E.D.N.Y.2010) (the plaintiffs' opposition papers contain a general request for "an opportunity to amend their pleading as Rule 15 permits, in the event that the Court finds anything lacking."). If the Norwood plaintiffs are able to allege that similarly situated property owners were treated differently, naming such owners, and that they were treated differently as a result of

malice, bad faith or intentional discrimination, the Norwood plaintiffs could allege an equal protection claim sufficient to pass Rule 12(b)(6) muster. Accordingly, the Norwood plaintiffs' are granted leave to replead their equal protection claim only. *See A.B.C. Home Furnishings, Inc. v. Town of East Hampton*, 947 F.Supp. 635, 647 (E.D.N.Y. 1996).

With respect to the Orlowski plaintiffs, since there is no evidence of undue prejudice to defendants or dilatory motives by plaintiffs, the Court grants plaintiffs' motion to amend their complaint. Plaintiffs' amended complaint may not add any additional claims, but simply include additional facts in support of their arguments on the equal protection claim.

**D.      Norwood's Request for Declaratory Relief**

Defendants argue that this Court lacks subject matter jurisdiction over the Norwood plaintiffs' request for declaratory relief because plaintiffs failed to commence an Article 78 proceeding in state court within the applicable statute of limitations.  Plaintiffs do not present any argument in support of this claim but assert, "these claims [. . .] are properly made, however, [plaintiffs] respectfully leave determination of this portion of the complaint within the sound discretion of this Honorable Court".  Because plaintiffs fail to sufficiently respond to defendants' arguments for the dismissal of this claim, defendants' burden with regard to those arguments is modest. *See Douglas v. New York State Adirondack Park Agency*, 2012 WL 3999763, at *30 (N.D.N.Y. 2012).

Article 78 affords meaningful and constitutionally-adequate post-deprivation due process. *C.C.S.com USA, Inc. v. Gerhauser*, 2012 WL 1118625, at *7 (E.D.N.Y. 2012) (citing *inter alia Manza v. Newhard*, 2012 WL 917286, at *2 (2d Cir. 2012) (noting that Article 78 provided plaintiff with adequate post-deprivation due process)); *see also Hampton Bays*, 127 F.Supp.2d at 381 (E.D.N.Y.2001) (availability of Article 78 proceeding precluded procedural due process

23

claim arising from denial of building permit). A proceeding pursuant to N.Y.C.P.L.R. Art. 78 is available to challenge whether an ordinance was enacted in accordance with the proper procedures. *Save Pine Bush, Inc. v. City of Albany*, 70 N.Y.2d 193, 202 (1987). The statute of limitations for Article 78 proceedings is four months. N.Y.C.P.L.R. § 217; *Erie Boulevard Triangle Corp. v. City of Schenectady,* 250 F.Supp.2d 22, 36 (N.D.N.Y. 2003) (citing *Matter of Save the Pine Bush v. City of Albany*, 70 N.Y.2d 193, 203 (1987)).

In the Third Cause of Action, the Norwood plaintiffs seek a judgment declaring that plaintiffs are entitled to a building permit and Certificate of Occupancy. Plaintiffs claim that Salvatore improperly ordered plaintiffs to perform work in anticipation of a building permit in an effort to advance his "racist agenda". The claim for declaratory judgment is, "an inappropriate vehicle" because plaintiffs are not challenging the validity of any portion of the Code. *See Sandy Hollow Assoc. LLC v. Inc. Vill. of Port Washington N.,* 2010 WL 6419570, at *24 -26 (E.D.N.Y. 2010) (citing *Janiak v. Town of Greenville*, 203 A.D.2d 329, 331 (2d Dep't 1994) (declaratory judgment action is the appropriate vehicle for bringing a challenge that is "clearly legislative in nature, as evinced by its general applicability, indefinite duration and formal adoption")). Since plaintiffs' claim is that Salvatore acted beyond the scope of his authority under the Code, the proper forum for plaintiffs' claims was an Article 78 proceeding in the appropriate New York State Supreme Court. *Id.* (citing N.Y. C.P.L.R. § 7803); *see also Trager v. Town of Clifton Park*, 303 A.D.2d 875, 877 (3d Dep't 2003) (claim alleging that "defendant illegally and arbitrarily imposed, and then increased, certain municipal fees" "should have been challenged in a CPLR article 78 proceeding"). In the complaint, the Norwood plaintiffs allege that Salvatore demanded that they perform "prep work" in July 2009 and that he reiterated those demands in September 2009. Plaintiffs' time to bring an Article 78 proceeding has expired. Because plaintiffs did not

challenge Salvatore's exercise of authority within four months, plaintiffs are now barred from alleging such claims here.

Defendants' motion to dismiss the Norwood plaintiffs' third cause of action for declaratory relief is granted.

**E.      Orlowski Plaintiffs' Claim for Malicious Prosecution**

Defendants vaguely argue that the Orlowski plaintiffs' malicious prosecution claim must be dismissed because it is barred by the applicable statute of limitations.  As noted *supra*, plaintiffs failed to present any clear argument in support of this claim.

Initially, the Court notes that plaintiffs' malicious prosecution claims are ambiguous and it is unclear whether the claim is asserted pursuant to federal and/or state law.  In the complaint, the Orlowski plaintiffs' third cause of action is for "malicious prosecution pursuant to 42 USC 1983". However, in their opposition to defendants' motion to dismiss, the Orlowski plaintiffs allege that their "state law claim" for malicious prosecution is "properly made".  While neither party presents any cohesive argument in support or in opposition to this claim, the Court, upon it's own independent review, finds that plaintiffs' malicious prosecution claim, regardless of how it is plead, is subject to dismissal.

In order to state a viable claim for malicious prosecution in New York, a plaintiff must show: (1) the initiation and continuation of criminal process against the plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) the lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions. *See Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir.2003).  In addition, to prevail upon a Section 1983 malicious prosecution claim, a plaintiff must also show that there was a Fourth Amendment "seizure". *Washington v. Cnty. of Rockland*, 373 F.3d 310, 316 (2d Cir.2004).  To satisfy the

constitutional element, plaintiff must show a seizure or other "perversion of proper legal procedures" implicating plaintiff's personal liberty and privacy interests under the Fourth Amendment. *Id.*

Here, plaintiffs § 1983 malicious prosecution claim is insufficient because plaintiffs failed to plead the seizure element. The Second Circuit has held that "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." *Dellutri v. Vill.of Elmsford*, 2012 WL 4473268, at *12 (S.D.N.Y. 2012) (citing *Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010)). Some courts have held that a criminal process involving multiple court appearances effects a seizure under the Fourth Amendment. *Id.* (citations omitted). "However, the weight of district court authority in circumstances [. . . ] involving a plaintiff charged with non-felony offenses who was neither arraigned nor physically detained but who might have made a number of court appearances, counsels against finding a constitutional injury." *Id.* (citation omitted); *see also Manbeck v. Micka*, 640 F.Supp.2d 351, 370 (S.D.N.Y.2009) (finding that a seizure had not occurred where plaintiff had not been detained at any point after she had been "issued appearance tickets to appear in Town Justice Court to answer misdemeanor charges of violations of the Town's Zoning Laws" and had a civil jury trial on the alleged violations); *see also Subirats v. D'Angelo*, 938 F.Supp. 143, 149 (E.D.N.Y. 1996) (the plaintiff was issued two summonses to appear in a state court as a result of his alleged violation of the Huntington Town Code).

Here, not only have plaintiffs failed to plead a "seizure" to satisfy the constitutional element, plaintiffs have failed to specify the number of court appearances made in connection with the charge. *See Dellutri*, 2012 WL 4473268 at *12 (the plaintiff did not identify the number of court appearances he made in connection with his trial). There is no evidence that plaintiffs

were required to post bail, or that their ability to travel was limited.  Given the vague allegations in the complaint, the Court grants defendants' motion to dismiss plaintiffs' 1983 claim for malicious prosecution.

To the extent that plaintiffs intend to assert a claim for malicious prosecution under New York State law, that claim is also subject to dismissal.  The statute of limitations under New York law for malicious prosecution is one year.  *See* N.Y. CPLR § 215(3); *see also Brown v. Seniuk*, 2002 WL 32096576, at *3 (E.D.N.Y. 2002) (the Statute of Limitations for actions for malicious prosecution is three years under 42 U.S.C. § 1983, and one year under New York state law).  The cause of action accrues when there is a favorable termination of criminal proceedings against the plaintiff.  *Baggett v. Town of Lloyd,* 2011 WL 4565865, at *4 (N.D.N.Y. 2011) (citing *Roman v. Comp USA, Inc*., 38 A.D.3d 751 (2d Dep't 2007)).

In this matter, plaintiffs allege that they were found "not guilty" after a trial on October 25, 2010.  Therefore, because more than one year elapsed between the termination of the proceedings and the filing of the complaint, plaintiffs state law claim for malicious prosecution is untimely and must be dismissed.


**F.      Qualified Immunity**

Defendants claim that dismissal is warranted based upon qualified immunity.  "The doctrine of qualified immunity shields public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir.2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). For a constitutional right to be "clearly established" for purposes of determining whether an officer is entitled to qualified immunity, the

"contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Mollica v. Volker*, 229 F.3d 366, 370–71 (2d Cir.2000) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (emphasis in original). "Where the right at issue in the circumstances confronting [the] officials was clearly established but was violated, the officials will nonetheless be entitled to qualified immunity 'if ... it was objectively reasonable for them to believe their acts did not violate those rights.'" *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (quotation and other citation omitted).

The determination of whether an official's conduct was objectively reasonable is a mixed question of law and fact. *See Zellner*, 494 F.3d at 367 (citing *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004)) (other citations omitted). "The ultimate question of whether it was objectively reasonable for an official to believe that his conduct did not violate a clearly established right, i.e., whether officials of reasonable competence could disagree as to the lawfulness of such conduct, is to be decided by the court. However, '[a] contention that ... it was objectively reasonable for the official to believe that his acts did not violate those rights has "its principle focus on the particular facts of the case." *Id.* (quotation and other citations omitted). If there is no dispute as to any material fact, the issue of whether the official's conduct was objectively reasonable is an issue of law to be decided by the court. *See id.* at 368 (citation omitted). Any unresolved factual issues, however, must be resolved by the jury. *See id.* (quoting *Kerman*, 374 F.3d at 109) (other citations omitted). Once the court has received the jury's decision as to "what the facts were that the officer faced or perceived," the court must then "make

the ultimate legal determination of whether qualified immunity attaches on those facts." *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir.2003) (quotation omitted); *see also Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir.1995) (quotation omitted).

Having carefully considered the present record, the Court is not well-positioned at this early stage to dismiss plaintiff's claims on the basis of qualified immunity. The Court finds that "[r]esolution of qualified immunity depends on the determination of certain factual questions that cannot be answered at this stage of the litigation." *Denton v. McKee*, 332 F.Supp.2d 659, 666 (S.D.N.Y. 2004). For the Court to find that defendants are entitled to qualified immunity, it would have to engage in improper credibility determinations, which it is unwilling to do. *See Robison v. Via*, 821 F.2d 913, 923–24 (2d Cir.1987).

## CONCLUSION

**IT IS HEREBY**

**ORDERED** that defendants' motion to dismiss plaintiffs' complaint (Dkt. No. 8) is **GRANTED IN PART AND DENIED IN PART AS FOLLOWS;** it is

**ORDERED**, that defendant Town of Hancock's motion to dismiss plaintiffs' complaint due to insufficient service is **DENIED**; it is further

**ORDERED**, that defendant Salvatore's motion to dismiss plaintiffs' claims against him in his official capacity, for lack of personal jurisdiction, is **DENIED**; it is further

**ORDERED**, that defendant Salvatore's motion to dismiss plaintiffs' claims against him in his individual capacity, for lack of personal jurisdiction, is **GRANTED**; it is further

**ORDERED**, that defendants' motion to dismiss Norwood plaintiffs' substantive due process claims is **DENIED**; it is further

**ORDERED**, that defendants' motion to dismiss Orlowski plaintiffs' substantive due process claims is **GRANTED**; it is further

**ORDERED**, that defendants' motion to dismiss Norwood plaintiffs' equal protection claims is **GRANTED with leave to amend as discussed** *supra*; it is further

**ORDERED**, that defendants' motion to dismiss Orlowski plaintiffs' equal protection claims is **GRANTED with leave to amend as discussed** *supra*; it is further

**ORDERED**, that defendants' motion to dismiss Norwood plaintiffs' third cause of action for declaratory relief is **GRANTED**; it is further

**ORDERED**, that defendants' motion to dismiss the Orlowski plaintiffs' malicious prosecution claims is **GRANTED**; it is further

**ORDERED**, that defendants' motion to dismiss the complaint based upon qualified immunity is **DENIED**; it is further

**ORDERED**, that plaintiffs shall file and serve their amended complaint with respect to equal protection claims only, consistent with this Order, within fourteen days of the date of this Order in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  April 10, 2013
       Albany, New York

Mae A. D'Agostino
U.S. District Judge