**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DOUGLAS NORWOOD, III, LEEANN NORWOOD,**
**D.N., Minor Son of Plaintiffs NORWOOD,**
**PAUL ORLOWSKI, and LENA ORLOWSKI,**

                                        **Plaintiffs,**

        **vs.**                                        **3:12-CV-1025**
                                                       **(MAD/DEP)**

**MICHAEL SALVATORE, in his capacity as**
**TOWN OF HANCOCK CODE ENFORCEMENT**
**OFFICER, and TOWN OF HANCOCK,**

                                        **Defendants.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**OFFICE OF JOHN V. JANUSAS, ESQ.**     **JOHN V. JANUSAS, ESQ.**
26 Court Street
Suite 2511
Brooklyn, New York 11242
Attorney for Plaintiffs

**MCKENZIE HUGHES LLP**                 **JEFFREY D. BROWN, ESQ.**
101 South Salina Street
P.O. Box 4967
Syracuse, New York 13221
Attorneys for Defendants


**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        Plaintiffs commenced this action on June 22, 2012, under 42 U.S.C. § 1983 alleging, *inter*

*alia*, that Defendants violated their Fourteenth Amendment rights to substantive due process and

equal protection.  Plaintiffs' claims arise from allegations surrounding their interactions with the

Town of Hancock, New York, and its Code Enforcement Officer, Michael Salvatore, regarding

certificates of occupancy, building permits, and other certificates and permits. Presently before the Court is Defendants' second motion to dismiss Plaintiffs' equal protection claims. Dkt. No. 22.

## II. BACKGROUND

### A.   Procedural History

Following the filing of Plaintiffs' initial complaint on June 22, 2012, Defendants moved to dismiss in lieu of answering on October 23, 2012, pursuant to Fed. R. Civ. P. 12(b)(5) and 12(b)(6). Dkt. No. 8. On April 10, 2013, this Court issued a Memorandum-Decision and Order granting in part and denying in part Defendants' first motion to dismiss. Dkt. No. 15 ("April 10, 2013, MDO"). With respect to Defendants' 12(b)(5) motion to dismiss due to insufficient service, the April 10, 2013, MDO denied that motion as to Defendant Town of Hancock and Defendant Michael Salvatore in his official capacity, and granted that motion as to Defendant Salvatore in his personal capacity. Defendants' 12(b)(6) motion to dismiss Plaintiffs' substantive due process claims was denied as to the Norwood Plaintiffs and granted as to the Orlowski Plaintiffs, and the motion to dismiss Plaintiffs' equal protection claims was granted as to both the Norwood and Orlowski Plaintiffs, with leave to amend. In addition, the April 10, 2013, MDO dismissed the Norwood Plaintiffs' cause of action for declaratory relief and the Orlowski Plaintiffs' malicious prosecution claims. Finally, Defendants' motion to dismiss on qualified immunity grounds was denied.

Thereafter, Plaintiffs amended their complaint on May 6, 2013, to include new allegations regarding their equal protection claims. Dkt. No. 19, 19-1 ("Amended Complaint"). Defendants then filed a second 12(b)(6) motion to dismiss Plaintiffs' equal protection claims. Dkt. No. 22.

2

On June 18, 2013, counsel for Plaintiffs submitted a three paragraph Affidavit in Partial Opposition.  Dkt. No. 24.

### B.    Relevant Allegations

The Court assumes the parties' familiarity with Plaintiffs' allegations, as discussed in the April 10, 2013, MDO, and discusses only those allegations relevant to disposition of the instant motion to dismiss.  These allegations are presumed to be true only for the purposes of this motion, and do not constitute findings of fact by the Court.

### 1.    The Norwood Plaintiffs

Plaintiffs Douglas and Leeann Norwood, along with their minor son D.N. (collectively, the "Norwood Plaintiffs"), reside at 4085 O&W Road, East Branch, New York, in the Town of Hancock. Dkt. No. 19, at 1.[1]  The Norwood Plaintiffs purchased a home in East Branch, Town of Hancock, New York in 1998, which was destroyed by a fire in 2009.  *Id.* at 3.  On or about July 15, 2009, the Norwood Plaintiffs contacted Defendant Salvatore, the Town of Hancock Code Enforcement Officer ("CEO"), to apply for a building permit to rebuild their home.  Defendant Salvatore instructed them, after visiting their property, that certain "prep" work would have to be performed before they could apply for the building permit.  *See id.* at 4. Thereafter, the Norwood Plaintiffs began expending funds performing the requested "prep" work, but Salvatore's demands in that regard changed over time.  In particular, "Salvatore demanded an elevation certificate and

---

[1] The pages of Plaintiffs' Amended Complaint are not numbered and the numbered paragraphs of do not run consecutively through the document as required under Fed. R. Civ. P. 10(b).  Moreover, the Amended Complaint was electronically filed in two parts.  Accordingly, to avoid confusion, the Court refers to the page numbers assigned by the Electronic Case Filing system to each part of the Amended Complaint.  Counsel for Plaintiffs is respectively reminded that, for ease of reference, each page of any document filed with the Court is to be numbered, and each paragraph in a complaint is to be consecutively numbered throughout the complaint, rather than numbered within each section as done here.

engineered plans for the footings and piers," "Salvatore demanded that the plaintiffs Norwood install the concrete footings and piers with steel reinforcements," and "Salvatore insisted upon installation of flooding vents." *See id.* at 4-5.  On or about September 15, 2009, Salvatore performed an inspection of the property and issued additional demands regarding work to be performed prior to issuance of the building permit.  During this inspection, the Norwood Plaintiffs allege, Salvatore raised his voice and used certain racial epithets in describing prospective tenants for a new development adjacent to their property.  *See id.* at 5.[2]  Ultimately, after the Norwood Plaintiffs had completed all of the work requested by Salvatore, Salvatore instructed the Norwood Plaintiffs to halt construction and informed them that he would not issue a building permit or certificate of occupancy.  *See id.* at 6.

The Norwood Plaintiffs allege that their treatment "was in marked contrast to the treatment of Joel May," who was similarly situated to them.  *Id.* at 6.  Mr. May also owned property in the Town of Hancock and sought to improve it in 2008 by installing a manufactured home on it.  Installation of a manufactured home and rebuilding of a home are similar activities, the Norwood Plaintiffs allege, in that the purpose of both is to create a residence and they both require submission of a building permit application, issuance of a building permit, and the grant of a certificate of occupancy.  Mr. May was treated differently than the Norwood Plaintiffs in that

---

[2]  Specifically, the Norwood Plaintiffs allege as follows:

> [D]efendant SALVATORE raised his voice at the plaintiffs NORWOOD, in front of their fourteen year old son, D.N., and exclaimed "you really do not want to rebuild at this location, because ANGELO VALENTI is going to have niggers and spics moving in across the street."  He continued his diatribe yelling that the "niggers and spics will be using all the units that ANGELO VALENTI was planning to install" and as a result the plaintiffs NORWOOD would not want to live there.

*Id.*

Mr. May installed the manufactured home on his property in 2008 without a permit, connected it to utilities without a building permit, and has occupied it since without ever applying for or obtaining a building permit or certificate of occupancy. In addition, Mr. May was not ordered to perform any "prep" work at his property prior to its use as a residence, and his home was installed in violation of several building codes, including lack of a proper septic tank and foundation. *See id.* at 6-8. As a result of this disparate treatment of similarly situated individuals, it is alleged that Salvatore's actions "were borne of malicious ill intent, and without any justification whatsoever." *Id.* at 8.

The Norwood Plaintiffs further allege that their treatment "was in marked contrast to the treatment of David Menhenett." *Id.* Mr. Menhenett also owns property in the Town of Hancock, located at 677 Old Route 17, which he sought to improve in 2011 by constructing a home. Construction of a home and rebuilding of a home are similar activities, the Norwood Plaintiffs allege, in that the purpose of both is to create a residence and they both require submission of a building permit application, issuance of a building permit, and the grant of a certificate of occupancy. Mr. Menhenett was treated differently than the Norwood Plaintiffs in that Mr. Menhenett constructed a home on his property in 2011 without a permit, connected it to utilities without a building permit, and has occupied it without ever applying for or obtaining a building permit or certificate of occupancy. In addition, Mr. Menhenett was not ordered to perform any "prep" work at his property prior to its use as a residence, and his home was constructed in violation of several building codes, including lack of a proper septic tank and foundation. *See id.* at 6-8. After neighbors of Mr. Menhenett complained about the lack of a proper septic tank to the New York State Department of Health, an inspector from that agency visited Mr. Menhenett's property and immediately ordered Mr. Menhenett and the Defendants to remove the illegal septic

tank and rectify the problem. The other code violations at Mr. Menhenett's property remain unresolved. As a result of this disparate treatment of similarly situated individuals, it is again alleged that Salvatore's actions "were borne of malicious ill intent, and without any justification whatsoever." *Id.* at 11.

The Norwood Plaintiffs allege that the conduct described above was in furtherance of Defendants' "racist agenda and 'de facto' zoning scheme designed to exclude minorities from residing within [the] Town of Hancock." Dkt. No. 19-1 at 1. The Norwood Plaintiffs do not allege that they are members of any racial group or any other protected class.

### 2.     The Orlowski Plaintiffs

Plaintiffs Paul Orloski and Lena Orlowski (collectively, the "Orlowski Plaintiffs"), reside in the Town of Hancock at 3350 Readburn Road, Walton, New York. Dkt. No. 19, at 1. In or about March 2009, the Orlowski Plaintiffs contacted Defendant Salvatore by telephone to determine whether a building permit or any other documentation was required from the Town of Hancock before they moved a manufactured (or mobile) home from one location on their property to another. Dkt. No. 19-1 at 4. Defendant Salvatore instructed them that if the manufactured home was to be relocated without being reoccupied or connected to utilities, then no permit would be necessary. Thereafter, the Orlowski Plaintiffs relocated the manufactured home to new location on their property. Defendant Salvatore later commented to the Orlowski Plaintffs that he "saw where it was relocated," and "liked" the new spot. *Id.* In April 2009, the Orlowski Plaintiffs received a letter from Salvatore warning that relocation of a manufactured home without a building permit constituted a violation of Town of Hancock Local Law #1, and threatened to fine them up to $1,000 per day if it was not removed immediately. The Orlowski Plaintiffs then confronted Defendant Salvatore regarding his prior statements to them that a building permit was

not necessary prior to their relocation of the manufactured home. Salvatore responded that he did not recall speaking to the Orlowski Plaintiffs, and if they did not have his statement recorded or in writing, "then that's too bad." *Id.* at 5. In April 2010, the Orlowski Plaintiffs received an appearance ticket which charged them with Building without a Permit. During a September 2010 appearance in the Town of Hancock Justice Court, the Orlowski Plaintiffs were told by Town Attorney Leonard Sienko and Defendant Salvatore they could plead guilty, pay a $600 fine, and then either remove the manufactured home or meet several requirements for a building permit. The Orlowksi Plaintiffs informed Defendant Salvatore at this time that their neighbor, Joel May, had installed a manufactured home and connected it to utilities without a permit in 2008, and had occupied it since without a certificate of occupancy. The Orlowski Plaintiffs did not plead guilty and following a trial on October 25, 2010, they were found not guilty. On November 16, 2010, they received another letter from Salvatore warning that relocation of a manufactured home without a building permit constituted a violation of Town of Hancock Local Law #1, and threatened to fine them up to $1,000 per day if it was not removed immediately. Thereafter, in response to the new letter issued by Salvatore, the Orlowski Plaintiffs dismantled the manufactured home and removed it from their property. *See id.* at 5-6.

The Orlowski Plaintiffs further allege that Salvatore's conduct with respect to their property, particularly when compared to Salvatore's conduct with respect to Mr. Mays and Mr. Menhenett, "demonstrat[es] a pattern of bad faith and malicious intent to harm [them.]" "[T]here is no reasonable explanation for" this "pattern of wrongfully favoring some property owners over others" "other than malice and bad faith intent to injure" the Orlowski Plaintiffs. *Id.* at 7. The Orlowski Plaintiffs do not allege that they are members of any protected class.

### III. DISCUSSION

## A.      Legal Standard

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief and pleadings without considering the substantive merits of the case.  *See Global Network Commc'ns v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006); *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself" unless all parties are given a reasonable opportunity to submit extrinsic evidence.  *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).  In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein. *Robinson v. Town of Kent*, No. 11 Civ. 2875, 2012 WL 3024766, at *3-4  (S.D.N.Y. July 24, 2012) (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim,"  *see* Fed. R. Civ. P. 8(a)(2), with sufficient facts "to sho[w] that the pleader is entitled to relief[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (internal quotation marks omitted).  Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555, and present claims that are "plausible on [their] face," *id*. at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at

678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.* at 570.

## B.      Equal Protection Claims

"The Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, [the Second Circuit has] long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Id.* (citation omitted). "To state an equal protection claim, a plaintiff must charge a governmental officer not only with deliberately interpreting a statute against the plaintiff, but also with singling him out alone for that misinterpretation." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d. Cir. 1994) (internal quotations and citation omitted). "Where, as here, a plaintiff does not claim to be a member of a constitutionally protected class, he may bring an Equal Protection claim pursuant to one of two theories: (1) selective enforcement, or (2) 'class of one.'" *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 433 (S.D.N.Y. 2013) (footnote omitted). Under either a selective enforcement or "class of one" equal protection claim, a plaintiff must show treatment different from other

similarly situated individuals.  *See Nemeth v. Vill. of Hancock*, No. 3:10-CV-1161, 2011 WL 56063, *5 (N.D.N.Y. Jan. 7, 2011)

A successful selective enforcement equal protection claim requires pleading and proof: (1) that the plaintiff "was treated differently from other similarly situated individuals"; and (2) that "such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure [the plaintiff]."  *U.S. v. Stewart*, 590 F.3d 93, 121 (2d Cir. 2009), cert. denied by *Sattar v. U.S.*, 559 U.S. 1031 (2010) (quoting *Harlen Assocs.*, 273 F.3d at 499); *see also Bizarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).  The Second Circuit has repeatedly recognized that "cases predicating constitutional violations on selective treatment motivated by ill-will, rather than by protected-class status or an intent to inhibit the exercise of constitutional rights, are 'lodged in a murky corner of equal protection law in which there are surprisingly few cases and no clearly delineated rules to apply.'" *Bizzaro*, 394 F.3d at 86 (quoting *Leclair*, 627 F.2d at 608).  It is clear, however, that a plaintiff must allege more than mere conclusory allegations to establish malicious or bad faith intent on behalf of a defendant to harm the plaintiff.  *See 33 Seminary LLC v. City of Binghamton*, 869 F. Supp. 2d 282, 310 (N.D.N.Y. 2012); *Laidlaw Energy and Envrmt'l, Inc. v. Town of Ellicottville*, No. 08-CV-32-S, 2011 WL 4954881, *11 (W.D.N.Y. Oct. 18, 2011); *Toussie v. Town Bd. of Town of East Hampton*, No. CIVA 08-1922, 2010 WL 597469, *9-10 (E.D.N.Y. Feb. 17, 2010).

The Supreme Court has affirmed the validity of "class of one" claims "where the plaintiff alleges that she has been [1] intentionally treated differently from others similarly situated and [2] that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).  "[A]n *Olech*-type equal protection claim focuses on

whether the official's conduct was rationally related to the accomplishment of the work of their agency." *Bizarro*, 394 F.3d at 88-89. "Stated differently, a plaintiff asserting a 'class of one' equal protection claim must allege that the intentional disparate treatment . . . was 'wholly arbitrary' or 'irrational.'" *Vaher*, 916 F. Supp. 2d at 433 (citations omitted). In order to survive a motion to dismiss, a plaintiff making a "class of one" claim must allege specific examples of differing treatment of others who are similarly situated. *See Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010). "Courts, including the Second Circuit, have repeatedly cautioned about the danger of ordinary disputes between a citizen and a municipality – whether it be about land use, licenses, inspections, or some other regulatory or investigative function of local governments – being transformed into federal lawsuits by an incorrect, overexpansive theory of class-of-one liability." *Crippen v. Town of Hempstead*, No. 07-CV-3478, 2013 WL 1283402, *7 (E.D.N.Y. Mar. 29, 2013).

"[T]here is disagreement within the Second Circuit regarding the precise standard for determining whether comparators are similarly situated for [selective enforcement and 'class of one'] claims." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011). In the selective enforcement context, plaintiffs must compare themselves to individuals that are "similarly situated in all material respects." *Sharpe v. City of New York*, No. 11 CIV. 5494, 2013 WL 2356063, *4 (E.D.N.Y. May 29, 2013) (citation omitted). A plaintiff need not show exact correlation between herself and the comparators; the test is whether a prudent person would think them roughly equivalent. *Mosdos*, 815 F. Supp. 2d at 696; *Abel v. Morabito*, No. 04 Civ. 07284, 2009 WL 321007, *5 (S.D.N.Y. Feb. 10, 2009); *Estate of Morris v. Dapolito*, 297 F. Supp. 2d 680, 686 (S.D.N.Y. 2004).

In a "class of one" case, the "level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high," because such comparison is used "to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose – whether personal or otherwise – is all but certain." *Neilson v. D'Angelis*, 409 F.3d 100, 104-05 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008) (per curiam)). Thus, the comparator's circumstances must be "*prima facie* identical." *Id.* at 105. "Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (quoting *Neilson*, 409 F.3d at 105).

In *Skehan v. Village of Mamaroneck*, 465 F.3d 96 (2d Cir. 2006), *overruled on other grounds by Appel*, 531 F.3d at 140, the Second Circuit cited the *Neilson* test in explaining what a plaintiff must show to prevail on a selective treatment claim. *Id.* at 110. Following *Skehan*, some courts have extended the "extremely high" level of similarity standard for "class of one" claims into the selective enforcement context. *See, e.g.*, *Kamholtz v. Yates Cnty.*, No. 08-CV-6210, 2008 WL 5114964, *5 (W.D.N.Y. Dec. 3, 2008), *aff'd* 350 Fed. Appx. 589 (2d Cir. 2009); *Dones v. City of New York*, No. 07-CV-3085, 2008 WL 2742108, *9 (S.D.N.Y. July 9, 2008) (citing *Skehan*). Since *Skehan* was decided solely on qualified immunity grounds and the Second Circuit has subsequently indicated that it was actually a "class of one" case, several courts have found that the "class of one" standard does not apply to selective enforcement cases. *See, e.g., Mosdos,*

815 F. Supp. 2d at 694; *Frank Sloup & Crabs Unlimited, LLC v. Loeffler*, 745 F. Supp. 2d 115, 130 (E.D.N.Y. 2010) ("Although some district courts in the Second Circuit have stated that the standard for similarly situated when bringing a selective enforcement claim is the same as in a 'class of one' claim, the Court employs the slightly different formulations set forth by the Second Circuit for each claim. . . .  [I]f anything, the two standards differ in that the similarly situated standard for class of one claims is more stringent.") (citation and internal quotation marks omitted); *Mangino v. Inc. Vill. of Patchogue*, 739 F. Supp. 2d 205, 255-56 (E.D.N.Y. 2010) (same); *Faulks v. City of Hartford*, No. 08-CV-270, 2010 WL 259076, *7 (D. Conn. Jan. 19, 2010) (acknowledging that more courts have treated selective enforcement and "class of one" as separate claims with distinct elements of proof); *Vassallo v. Lando*, 591 F. Supp. 2d 172, 184 n.9 (E.D.N.Y. 2008) (applying different standards to the plaintiffs' selective enforcement and "class of one" claims).[3]  Moreover, as one court in the Second Circuit has observed, "[a]n extremely high level of similarity is required in the 'class of one' context because plaintiffs asserting those

---

[3]  Other courts have acknowledged the disagreement without deciding which standard should apply. *See, e.g., Fortunatus v. Clinton Co.*, No. 8:12-CV-458, 2013 WL 1386641, *14 (N.D.N.Y. Apr. 4, 2013) (noting disagreement within the Second Circuit, observing that "this Court does not understand the subtle distinction between 'extreme high degree' and 'all material respects,'" and ultimately concluding that the plaintiff's proof failed under the lesser standard); *Laidlaw*, 2011 WL 4954881, at *10 n.4 (acknowledging that "there is a dispute in this Circuit's district courts over whether the same standard applies to both selective enforcement and 'class of one' claims" while granting defendant's motion to dismiss "[b]ecause this Court finds that [plaintiff] is not similarly situated even under a more permissive selective enforcement standard, it need not consider whether [plaintiff] would fare better under the potentially more stringent 'class of one' standard"); *Gentile v. Nulty*, 769 F. Supp. 2d 573, 580 (S.D.N.Y. 2011) (noting that "courts are in some disagreement as to the meaning of 'similarly situated' in the selective enforcement context," but declining to decide which standard to apply on summary judgment because, under any standard, the plaintiff had not shown that there was a question of fact as to whether he was similarly situated to any comparators); *Wood v. Town of East Hampton*, No. 08–CV–4197, 2010 WL 3924847,*20 (E.D.N.Y. Sept. 30, 2010) (explaining that the court "need not resolve this disagreement because, under any of the standards articulated," the plaintiff had failed to allege that he was similarly situated to the proffered comparator).

claims are attempting to prove that the government's treatment was arbitrary and irrational." *Mosdos*, 815 F. Supp. 2d at 698. For these reasons, this Court agrees with those courts that have employed a more demanding standard of similarity for "class of one" claims than for selective enforcement claims.

## C.     Analysis

Neither the Norwood Plaintiffs nor the Orlowski Plaintiffs have alleged that the disparate treatment they received was motivated by membership in a protected class or the exercise of constitutional rights. Thus, their equal protection claims are "lodged in [the] murky corner of equal protection law." *Bizzaro*, 394 F.3d at 86. Although the Amended Complaint does not specify precisely which equal protection theory Plaintiffs are pursuing – selective enforcement or "class of one" – for the purposes of this motion to dismiss, the Court will analyze their respective claims under both theories.

### 1.     Selective Enforcement

The Norwood Plaintiffs allege that they are similarly situated to two comparators – Mr. May and Mr. Menhenett. The former, Mr. May, is alleged to have installed a manufactured home on his property in 2008 without a permit, connected it to utilities without a building permit, and occupied it since without ever applying for or obtaining a building permit or certificate of occupancy. Unlike the Norwood Plaintiffs, Mr. May was not ordered to perform any "prep" work at his property prior to its use as a residence, and his home was installed in violation of several building codes, including lack of a proper septic tank and foundation. The latter, Mr. Menhennet, is alleged to have constructed a home on his property in 2011 without a permit, connected it to utilities without a building permit, and occupied it without ever applying for or obtaining a building permit or certificate of occupancy. Mr. Menhenett was also not ordered to perform any

"prep" work at his property prior to its use as a residence, and his home was constructed in violation of several building codes, including lack of a proper septic tank and foundation.

As discussed above, selective enforcement equal protection claims require that plaintiffs allege a comparator who is "similarly situated in all material respects." Accepting the Norwood Plaintiffs' factual allegations as true and drawing all reasonable inferences in their favor, "the Court concludes that [the Norwood] Plaintiffs have failed to articulate how their property could be viewed by a reasonably prudent person as being roughly equivalent to [Mr. May's or Mr. Menhennet's] properties[.]" *Viteritti v. Inc. Vill. of Bayville*, 918 F. Supp. 2d 126, 135 (E.D.N.Y. 2013) (citation omitted). As alleged by the Norwood Plaintiffs, the "prep work" required of them by Defendants Salvatore and the Town of Hancock was related to mitigating flood damage. *See* Dkt. No. 19 at 4-5 (alleging that "Salvatore demanded an elevation certificate and engineered plans for the footings and piers," "Salvatore demanded that the plaintiffs Norwood install the concrete footings and piers with steel reinforcements," and "Salvatore insisted upon installation of flooding vents"). In order to plead a plausible selective enforcement equal protection claim, the Norwood Plaintiffs would have to identify at least one similarly situated comparator, who should have also been required to install flood damage mitigating features, and differing treatment. Since the Norwood Plaintiffs do not allege, for example, that the properties of Mr. May or Mr. Menhennet were in a similar location which would have required such "prep work" prior to issuance of a building permit or certificate of occupancy, they "compare the proverbial apples with the oranges[.]" *Nemeth*, 2011 WL 56063, at *6. Given that the Norwood Plaintiffs have failed to adequately plead a comparator who is similarly situated in all material respects, they cannot maintain a selective enforcement equal protection claim. *See Viteritti*, 918 F. Supp. 2d at 136 (granting the defendants' motion to dismiss selective enforcement claim because "a 29-foot

long, 4 1/2-foot high structure, comprised of boulders, a fence, and shrubs, which completely blocks any vehicular access to a street is not a condition that could be viewed by a reasonably prudent person as being roughly equivalent to broken pavement or large potholes"); *Filipowski v. Vill. of Greenwood Lake*, No. 10-CV-1753, 2013 WL 3357174, *7 (July 3, 2013) (finding that the plaintiffs had failed to allege facts sufficient to plausibly suggest sufficient similarity under either the "class of one" or selective enforcement standards because they did not describe the nature of the structures built on the properties, the zoning of the respective properties, or any other details relevant to the claim such as lot size or slope); *Nemeth*, 2011 WL 56063, at *6 (rejecting plaintiffs' attempt to "equate enforcement of a fence ordinance or a setback rule with enforcement of the Zoning Code's non-conforming use expansion regulations"); *Laidlaw*, 2011 WL 4954881, at *10 (dismissing selective enforcement claim where plaintiff had abandoned or vacated certain property and comparator did not, making zoning codes applicable to plaintiff different than those applicable to comparator). Accordingly, this claim is dismissed with prejudice.

With respect to the Orlowski Plaintiffs' selective enforcement claim, the Court has already found their similarly situated allegations regarding Mr. May to be sufficient to survive a motion to dismiss. *See* April 10, 2013, MDO at 21. This finding is therefore the law of the case. *See Am. Hotel Int'l Group, Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 378 (S.D.N.Y. 2009) ("Under the law of the case doctrine, 'a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation.'" (quoting *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991))). However, the Court has also found the allegations in the Orlowski Plaintiffs' original complaint with respect to Defendants' "malicious or bad faith intent to injure" to be wholly conclusory and insufficient to survive a motion to dismiss.

*See* April 10, 2013, MDO at 21-22.  Plaintiffs were afforded an opportunity to remedy this defect by amending their complaint, but, for the following reasons, they have failed to do so.

In the Amended Complaint, the Orlowski Plaintiffs essentially allege that the conduct which gives rise to their claims "demonstrat[es] a pattern of bad faith and malicious intent to harm [them,]" and that "there is no reasonable explanation for" this "pattern of wrongfully favoring some property owners over others" "other than malice and bad faith intent to injure." Dkt. No. 19-1 at 7.  These allegations remain conclusory and are insufficient to state a plausible claim that the differing treatment was motivated by malice or ill will.[4]  *See 33 Seminary LLC*, 869 F. Supp. 2d at 310 (holding that the plaintiffs had not sufficiently pled a selective enforcement claim due to their failure to explain the defendants' motive in alleged disparate treatment); *Nemeth*, 2011 WL 56063, at *7 (finding allegations in complaint which "merely theorize[d] that the asserted difference in treatment was because of Plaintiffs' relatively recent relocation to the Village" to be "unsupported by anything other than Plaintiffs' supposition that this consideration motivated Defendants[, which did] not raise the right to relief above the speculative level"); *Laidlaw*, 2011 WL 4954881, at *10 (dismissing selective enforcement claims where the only

---

[4] As discussed above, the Court has found the Norwood Plaintiffs' allegations of similarly situated individuals to be inadequate to survive a motion to dismiss under the selective enforcement standard.  Assuming, *arguendo*, that their allegations in this regard were sufficient, their selective enforcement claims would nevertheless be subject to dismissal.  Just like the Orlowski Plaintiffs, the Norwood Plaintiffs' allegations regarding bad faith are conclusory and insufficiently detailed.  Unlike the Orlowski Plaintiffs, however, the Norwood Plaintiffs have also alleged that racial animus played a role in their disparate treatment.  *See* Dkt. 19 at 3, 5-6.  These allegations, even if true, could not raise a claim of entitlement to relief.  The Norwood Plaintiffs have not alleged that they are members of any racial group or protected class.  In addition, they have not alleged that Salvatore's racist statements were directed at them.  Moreover, the Amended Complaint fails to allege how Defendants' "racist agenda" and "de facto zoning scheme" were advanced by the treatment suffered by the Norwood Plaintiffs.  Indeed, Salvatore's alleged statements suggest that his intention was to keep individuals *other than* the Norwoods out of the Town of Hancock.  Thus, the Norwood Plaintiffs have "not nudged [their] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 558.

17

specific factual allegation in support of plaintiff's claim was that the Town intended to injure plaintiff to benefit another resident).

In *Toussie v. Town Bd. of the Town of East Hampton*, the court dismissed the plaintiffs' selective enforcement claim where "the sole factual basis proffered to support the claim of malice [wa]s the Plaintiffs' refusal to sell the Town the land for its open space program." *Toussie*, 2010 WL 597469, at *10. The court noted that the plaintiffs had not alleged any personal conflicts with members of the Town board, or any other officials, and that the disparate treatment alleged was motivated to secure compliance with legitimate governmental objectives. Since the government was motivated for reasons not wholly unrelated to any legitimate state objective, it was therefore not impermissible in the sense required for an equal protection claim. *Id.* (quoting *Bizarro*, 394 F.3d at 87). Similarly here, Plaintiffs have not alleged any personal conflicts between themselves, the Town of Hancock, or Salvatore. Moreover, Plaintiffs have not alleged that Defendants' conduct was motivated by anything other than a desire to secure their compliance with building codes and other local laws. Thus, the allegations in the Amended Complaint are "at best, merely consistent with [Defendants'] liability and stop short of the line between possibility and plausibility of entitlement to relief." *Toussie*, at *10 (quoting *Iqbal*, 556 U.S. at 678).

Indeed, in his "Affirmation in Partial Opposition," counsel for Plaintiffs concedes that "[a]t this stage in the litigation, the plaintiffs simply do not know why they were so harshly treated as compared to others in the community, as depositions have not yet been held and discovery has not been completed." Dkt. No. 24, ¶ 2. Since Plaintiffs admittedly do not know why they suffered disparate treatment, they "have failed to state a plausible claim that the differing treatment between [their] property and the [comparators' property] was motivated by

malice or ill will." *Toussie*, 2010 WL 597469, at *10. Accordingly, Plaintiffs' selective enforcement equal protection claims fail and Defendants' motion to dismiss those claims is granted with prejudice. The Court will next analyze Plaintiffs' claims under a "class of one" theory, which do not require allegations of bad faith.

### 2. Class of One

The Court has already found the Norwood Plaintiffs' allegations regarding similarly situated individuals to be insufficient under the "in all material respects" standard applicable to selective enforcement claims. Thus, those same allegations are necessarily insufficient to survive a motion to dismiss under the more stringent standard applicable in "class of one" cases. Accordingly, the Norwood Plaintiffs' "class of one" equal protection claim is dismissed with prejudice on that basis. *Cf. Filipowski*, 2013 WL 3357174, at *8 & n.13 (finding allegations of similarly situated comparators to be insufficient under "class of one" standard and noting that even if the plaintiffs were alleging a selective enforcement claim, the court "would still find that Plaintiffs have failed to plausible allege that similarity"); *see also Mihaly v. Town of Trumbull Water Pollution Control Auth.*, No. 3:12cv1157, 2013 WL 2948329 (D. Conn. June 14, 2013) (dismissing "class of one" equal protection claims because the plaintiff did not allege that comparator properties "had a similarly low elevation" or that those properties "would have otherwise needed to install grinder pumps" in order to connect to sewer system).

Assuming, *arguendo*, that the Norwood Plaintiffs' similarly situated allegations were sufficiently detailed to survive a motion to dismiss under this standard, the "class of one" claim would nevertheless be subject to dismissal. In order to prevail on a motion to dismiss, plaintiffs must allege facts giving rise to an inference that the intentional disparate treatment at issue in a "class of one" claim was wholly arbitrary or irrational. On a motion to dismiss "allegations that

are conclusory and thus not entitled to the presumption of truth," such as those alleging that Defendants acted with "malicious and ill intent," or "bad faith," are to be set aside. *Toussie*, 2010 WL 597469, at *6 (citing *Hayden v. Paterson*, 594 F.3d 150 (2d Cir. 2010)).

Under a "class of one" theory, "[Defendants'] conduct is subject only to a rational basis review, a deferential standard that requires the denial of an equal protection challenge 'if there is any reasonably conceivable state of facts that could provide a rational basis' for [Defendants'] action." *Toussie*, 2010 WL 597469, at *8. Here, the Norwood Plaintiffs have failed to make factual allegations which would give rise to the inference that Defendants' treatment of them, as compared to those similarly situated, had no rational basis. *See Nemeth*, 2011 WL 56063, at *7 (dismissing "class of one" claim where "the allegations in the Complaint [did] not exclude the potential that there was a rational basis for the difference in treatment"). As discussed above, the "prep work" required of the Norwood Plaintiffs by Defendants was for the purpose of flood damage mitigation. Such requirements are rationally related to the legitimate government interest in enforcing laws governing residences and other structures erected on property subject to flooding. *Cf. Unique Properties LLC v. Terrebonne Parish Consol. Gov't*, 150 Fed. Appx. 313, 314 (5th Cir. 2005) (finding that district court did not err in holding "that drainage and street flooding issues are related to a legitimate government interest"); *Mandot Constr. v. St. Tammany Parish*, Civil Action No. 04-3057, 2006 WL 1328838, *7 (E.D. La. May 9, 2006) (holding that "the Parish has a legitimate government interest in protecting the adjacent property owners from flooding, which was rationally related to the Parish's requirement that [the plaintiff] receive approval of her drainage plan"). Nor do the Norwood Plaintiffs allege that these requirements were arbitrarily or irrationally applied to them because, for example, their property was not located in an area subject to flooding. "Plaintiffs do not set forth a plausible equal protection

claim merely because they did not achieve the result they would have liked." *Nemeth*, 2011 WL 56063, at *7. Thus, the Norwood Plaintiffs' "class of one" equal protection claim is implausible because the allegations are incompatible with the claim of no rational basis. Accordingly, the Norwood Plaintiffs' "class of one" equal protection claim must be dismissed.

With respect to the Orlowski Plaintiffs, the Court finds that they have sufficiently alleged an "extremely high" level of similarity between themselves and Mr. May. The Orlowski Plaintiffs allege that they sought permission from Defendants to relocate a manufactured home on their property and that Defendant Salvatore instructed them that they could do so without a building permit. Relying on this representation, the Orlowski Plaintiffs relocated the manufactured home. Thereafter, they were threatened with monetary fines and were issued an appearance ticket which charged them with Building without a Permit. The Orlowski Plaintiffs further allege that Mr. May also owned property in the Town of Hancock and, with Defendants' knowledge, installed a manufactured home on his property without a permit. Defendants have not prosecuted Mr. May or otherwise sought to enforce his compliance with local laws. At this stage of the litigation, these activities – relocation and installation of a manufactured home – are substantially similar in that the purpose of both is to install a manufactured home as a residence and they both require submission of a building permit application, issuance of a building permit, and the grant of a certificate of occupancy to do so. "In the context of this motion to dismiss, the court holds that the[se] allegations . . . are just plausible enough to survive a motion to dismiss. In so holding, the court focuses on the fact that with respect to th[is] particular propert[y], Plaintiffs have pled the existence of [a] propert[y] containing the same type of structure for which they were denied [a permit]." *Sacher v. Vill. of Old Brookville*, No. CV 12-6110, 2013 WL 4780046, *7 (E.D.N.Y. Sept. 4, 2013).

In addition, the Court cannot say, on the current record, that there is a rational basis for the disparate treatment alleged by the Orlowski Plaintiffs. They contend that a neighbor installed a manufactured home without obtaining a building permit and has occupied it since 2008. When they relocated an existing manufactured home on their property, Defendants insisted that they obtain a building permit and perform certain work on their property and the manufactured home before it could be occupied. No such action has been taken with respect to Mr. May. Thus, the Orlowski Plaintiffs' allegations, taken as true for the purposes of this motion to dismiss, are sufficient to nudge their "class of one" equal protection claim across the line to plausibility. Accordingly, Defendants' motion to dismiss the Orlowski Plaintiffs' "class of one" equal protection claim is denied. Defendants are, of course, free to make a motion for summary judgment on these claims once the record has been developed. "It remains to be see[n] whether such a claim will survive a motion for summary judgment." *Id.* at *8.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss is **GRANTED in part** and **DENIED in part**[5]; and the Court further

**ORDERS** that the Norwood Plaintiffs' equal protection claims are **DISMISSED** with prejudice; and the Court further

**ORDERS** that the Orlowski Plaintiffs' selective enforcement equal protection claim is **DISMISSED** with prejudice; and the Court further

---

[5] As a result of this Memorandum-Decision and Order, the only remaining claims are the Norwood Plaintiffs' substantive due process claim and the Orlowski Plaintiffs' "class of one" equal protection claim.

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  January 17, 2014
       Albany, New York

Mae A. D'Agostino
U.S. District Judge