**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DOUGLAS NORWOOD, III; LEEANN**
**NORWOOD; D.N., Minor Son of Plaintiffs**
**NORWOOD; PAUL ORLOWSKI; and LENA**
**ORLOWSKI,**

                                              **Plaintiffs,**

         vs.                                         3:12-cv-1025
                                                     (MAD/DEP)

**MICHAEL SALVATORE, in his capacity as**
**TOWN OF HANCOCK CODE ENFORCEMENT**
**OFFICER; and TOWN OF HANCOCK,**

                                   **Defendants.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**OFFICE OF JOHN V. JANUSAS, ESQ.**     **JOHN V. JANUSAS, ESQ.**
26 Court Street, Ste. 2511
Brooklyn, New York 11242
Attorney for Plaintiffs

**MACKENZIE HUGHES LLP**                **WILLIAM B. HUNT, ESQ.**
101 South Salina Street
PO Box 4967
Syracuse, New York 13221-4967
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        On June 22, 2012, Plaintiffs commenced this action pursuant to 42 U.S.C. § 1983.

Plaintiffs allege that Defendant Town of Hancock, New York, and its Code Enforcement Officer,

Defendant Michael Salvatore, violated Plaintiffs' rights under the Due Process and Equal

Protection Clauses in relation to Plaintiffs' efforts to secure certain building permits and other

permits for their properties. Presently before the Court is Defendants' motion for summary judgment. *See* Dkt. No. 42.

## II. BACKGROUND

**A.     Procedural History**

Plaintiffs filed an initial complaint on June 22, 2012, which alleged violations of Plaintiffs' substantive due process and equal protection rights, requested declaratory relief as to Plaintiffs Douglas and Leann Norwood and D.N. (collectively, the "Norwood Plaintiffs"), and asserted a malicious prosecution claim as to Plaintiffs Paul and Lena Orlowski (collectively, the "Orlowski Plaintiffs"). *See* Dkt. No. 1. On October 23, 2012, Defendants moved to dismiss the initial complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(5) and 12(b)(6). Dkt. No. 8. In a Memorandum-Decision and Order ("MDO") dated April 10, 2013, this Court granted Defendants' Rule 12(b)(5) motion to dismiss for insufficient service as to Defendant Salvatore in his personal capacity and denied the motion as to Defendant Town of Hancock and Defendant Salvatore in his official capacity. Dkt. No. 15 at 5-9. With respect to Defendants' Rule 12(b)(6) motion to dismiss for failure state a claim, the Court denied that motion as to the Norwood Plaintiffs' substantive due process claim, granted it as to the Norwood Plaintiffs' equal protection claim and cause of action for declaratory relief, and granted it as to the Orlowski Plaintiffs' substantive due process, equal protection, and malicious prosecution claims. *Id.* at 9-27. The Court granted Plaintiffs leave to amend their complaint as to their equal protection claims only. *Id.* at 22-23. Finally, the Court's April 10, 2013 MDO denied Defendants' motion to dismiss on qualified immunity grounds. *Id.* at 27-29.

On May 6, 2013, Plaintiffs filed an amended complaint, which expanded on Plaintiffs' allegations regarding their equal protection claims. *See* Dkt. Nos. 19, 19-1. Defendants then filed

a motion to dismiss Plaintiffs' equal protection claims. Dkt. No. 22. On January 17, 2014, the Court issued an MDO dismissing the Norwood Plaintiffs' equal protection claims and the Orlowski Plaintiffs' selective enforcement equal protection claim. *See* Dkt. No. 29. The Court denied Defendants' motion to dismiss as to the Orlowski Plaintiffs' "class of one" equal protection claim. *Id.* at 21-22. As a result of the Court's January 17, 2014 MDO, the only claims remaining in this action are the Norwood Plaintiffs' substantive due process claim and the Orlowski Plaintiffs' "class of one" equal protection claim. *See id.* at 22.

On January 31, 2014, Defendants filed their answer to Plaintiffs' amended complaint. Dkt. No. 30. After discovery, Defendants moved for summary judgment on June 30, 2014. Dkt. No. 42. Plaintiffs oppose the motion. *See* Dkt. No. 46.

## B. Factual Background

### 1. The Norwood Plaintiffs

The Norwood Plaintiffs owned property located in East Branch in the Town of Hancock (the "East Branch Property") during the time period relevant to the instant action. Dkt. No. 42-1 at ¶ 19. In May 2008, a fire destroyed the Norwood Plaintiffs' home located on the East Branch Property. *Id.* at ¶ 20. After the fire, the Norwood Plaintiffs sought to rebuild their home. *Id.* at ¶ 22. The East Branch Property is located in a Special Flood Hazard Area. *Id.* at ¶ 21.

On or about November 24, 2008, the Norwood Plaintiffs submitted a floodplain development permit application and building permit application to Defendants. *Id.* at ¶¶ 22-23. Defendants contend that the Norwood Plaintiffs never paid the required fees for the permit applications. Dkt. No. 42-1 at ¶ 25; Dkt. No. 42-14 at ¶¶ 7, 9. Defendant Salvatore attested that receipt of the Norwood Plaintiffs' application fees "would have been indicated by a notation at the bottom of the application that the fee was received by cash or check." Dkt. No. 42-14 at ¶ 9. The

Norwood Plaintiffs' applications contain no such notation. *See* Dkt. Nos. 42-17, 42-19. The Norwood Plaintiffs contend that they paid the application fees. *See* Dkt. No. 46 at 2; Dkt. No. 42-8 at 21-22.

Defendants neither granted nor denied the floodplain development and building permit applications. Dkt. No. 42-1 at ¶ 26. Defendant Salvatore permitted the Norwood Plaintiffs to perform preliminary work on rebuilding their home prior to the issuance of a building permit, including the installation of footings and pillars. *See* Dkt. No. 42-1 at ¶ 27; Dkt. No. 42-14 at ¶ 10; Dkt. No. 42-8 at 15-18.[1] The Norwood Plaintiffs also installed girders and a plywood

---

[1] In their opposition to Defendants' motion for summary judgment, Plaintiffs argue that Defendant Salvatore "specifically directed [the Norwood Plaintiffs] to perform [the] prep work . . . prior to issuance of a building permit" and "prevented the reconstruction of [the Norwood Plaintiffs'] home by personally directing them to expend their limited insurance funds before he would even consider the application for the building permit." Dkt. No. 46 at 2, 12. These assertions are not supported by the record.

In a deposition on April 18, 2014, Douglas Norwood stated that "[Defendant Salvatore] said . . . that we could dig and put the footings in. So, we put the footings in. [Defendant] Salvatore came and inspected them." Dkt. No. 42-8 at 15. Next, Defendant Salvatore "gave [Mr. Norwood] the go-ahead" on installing Sonotube concrete forms for the piers and steel. *Id.* at 16. Defendant Salvatore then inspected and approved the installed forms. *Id.* Finally, Mr. Norwood "just went ahead and put the girders up. [Defendant Salvatore] didn't approve that. And that's when he said . . . to finish what [the Norwood Plaintiffs were] doing and then [they would] have to get the permits to build." *Id.* at 17.

Later in the deposition, when asked to explain the steps that Defendant Salvatore instructed him to take prior to rebuilding, Mr. Norwood responded: "Well, I had to get permits. I had to have it surveyed. I had to have, you know, the engineered plans for the footings, a drawing of what, roughly, the house was going to look like. So, you know, the same things we've been talking about." *Id.* at 28. In regards to the prep work performed, Mr. Norwood testified as follows: "I just recall talking to [Defendant Salvatore] in the office, and he told me after I showed him the plans that I could go ahead and do [the footing and pillar installations]." *Id.* at 30.

Nowhere does Mr. Norwood's deposition testimony indicate that Defendant Salvatore directed or required the Norwood Plaintiffs to perform the prep work in order for Defendant Salvatore to consider their building permit application. Plaintiffs do not point to any evidence in the record outside of Mr. Norwood's deposition testimony to support their claim. Furthermore,

(continued...)

platform without Defendant Salvatore's approval. Dkt. No. 42-8 at 29. The Norwood Plaintiffs contend that Defendant Salvatore then "told [Douglas Norwood] that [he] wasn't going to be able to get a permit to build." *Id.* at 13; *see also id.* at 17 ("[Defendant Salvatore] said that he didn't think he was going to give me the permits to build because it was in the floodplain."). Defendants contend that no action was taken on the Norwood Plaintiffs' permit applications because the permit fees were never paid. *See* Dkt. No. 42-14 at ¶ 12. The Norwood Plaintiffs ceased work on rebuilding and eventually sold the East Branch property. Dkt. No. 42-1 at ¶ 31.

### 2. *The Orlowski Plaintiffs*

The Orlowski Plaintiffs own property located on Readburn Road in Walton, New York, within the Town of Hancock (the "Readburn Road Property"). *Id.* at ¶ 32. Plaintiffs contend that in June 2009, Lena Orlowski called Defendant Salvatore and obtained his verbal permission to move a mobile home onto the Readburn Road Property. *See* Dkt. No. 46 at 3; Dkt. No. 42-10 at 8, 56.[2] Plaintiffs further contend that during this conversation, Defendant Salvatore "stated that no permits were required and it was fine to move the trailer [and that] [the Orlowski Plaintiffs] would only need [a permit] if [they] set it up for a home or if somebody was going to live there." Dkt. No. 42-10 at 8. In July 2009, the Orlowski Plaintiffs moved the mobile home onto the property. *Id.* Plaintiffs contend that Mrs. Orlowski again called Defendant Salvatore and

---

[1](...continued)
Defendant Salvatore attested as follows: "At the specific request of Mr. Norwood, I allowed certain preliminary construction activities (installation of footings and pillars) to take place on the Norwood Property pursuant to the Norwood Permit Application prior to the submission of a permit application fee." Dkt. No. 42-14 at ¶ 10. This description of events is consistent with Mr. Norwood's deposition testimony. Thus, it is undisputed that Defendant Salvatore permitted but did not require the performance of the prep work.

[2] Plaintiffs characterize the movement of the mobile home as a relocation from one part of the Orlowski Plaintiffs' property to another, while Defendants characterize it as a relocation onto the Readburn Road Property from elsewhere.

informed him that the trailer had been moved. *Id.* at 8-9. According to Plaintiffs, Defendant

Salvatore told Mrs. Orlowski "that he passed by [the Readburn Road Property] and he saw the

[mobile home,] where it was[,] and he liked where [the Orlowski Plaintiffs] put it." *Id.* at 9.[3]

The Orlowski Plaintiffs did not have a building permit or certificate of occupancy for the

mobile home. Dkt. No. 42-1 at ¶ 34. On April 14, 2010, Defendant Salvatore sent a letter to Paul

Orlowski, Jr., the Orlowski Plaintiffs' son, informing him that the new location of the mobile

home violated Town of Hancock local law. *See* Dkt. No. 42-25.[4] The letter explained that in

order to obtain a building permit and install the mobile home legally, the Orlowski Plaintiffs

would need to: (1) have the home inspected and obtain a warranty seal; (2) submit a foundation

plan; and (3) submit a septic plan from a design professional. *See id.* The Orlowski Plaintiffs

sought to meet the three requirements for a building permit, but were unable to locate a

professional that could perform an inspection and issue a warranty seal. Dkt. No. 42-10 at 15-16.

As a result, the Orlowski Plaintiffs did not apply for a building permit for the mobile home. Dkt.

No. 42-1 at ¶ 38.

On or about June 29, 2010, Paul Orlowski, Sr., received an appearance ticket instructing

him to appear in the Town of Hancock Town Court to answer the charge of building without a

permit. *See* Dkt. No. 42-26.[5] In July and August 2010, while awaiting the town court trial, the

Orlowski Plaintiffs dismantled the mobile home. *See* Dkt. No. 42-10 at 25-26. Following a trial

---

[3] Defendants do not confirm or deny that the two conversations occurred.

[4] Defendants erroneously addressed the letter to the Orlowski Plaintiffs' son and mistakenly indicated that the mobile home had been moved to his property, tax map number 389-1-6. *See* Dkt. No. 42-10 at 19-20. Defendants issued a violation appearance ticket that corrected the name, but not the tax map number. *See id.* at 20.

[5] The appearance ticket erroneously indicates that it was issued on June 29, 2009, when it was in fact issued on June 29, 2010. *See* Dkt. No. 42-10 at 22-23.

on October 25, 2014, the charges against the Orlowski Plaintiffs were dismissed on November 8, 2014 for insufficient evidence as to the actual location of the mobile home. Dkt. No. 42-1 at ¶ 41.[6]

On November 16, 2010, Defendant Salvatore sent a letter to Mr. Orlowski that correctly identified the tax map number of the Readburn Road Property, again informed the Orlowski Plaintiffs that the mobile home's placement violated Town of Hancock local law, and set out the three steps outlined in the original letter for bringing the mobile home into legal compliance. *See* Dkt. No. 42-27. In response, Mr. Orlowski informed Defendant Salvatore that the mobile home had been dismantled. Dkt. No. 42-10 at 27-28. The Orlowski Plaintiffs did not receive any further correspondence from Defendants. *Id.* at 28.

### 3. The May Property

In October 2008, the Orlowski Plaintiffs' neighbor, Joel May, placed a mobile home on his property. *See id.* at 32-33. On August 5, 2009, Defendants sent a letter to Tamara Conklin, the titled owner of the property, informing her that the mobile home violated Town of Hancock local law and outlining the same three requirements for bringing the mobile home into legal compliance that were identified in the letter to the Orlowski Plaintiffs. *See* Dkt. No. 42-20. Mr. May filed a building permit application for the mobile home on August 11, 2009 and paid the permit application fee on August 21, 2009. Dkt. No. 42-1 at ¶¶ 48-49; *see also* Dkt. No. 42-21. Defendants granted the building permit application on August 25, 2009. *See* Dkt. No. 42-1 at ¶ 50; Dkt. No. 42-22. Mr. May filed a building permit extension application for the mobile home on July 14, 2010, which Defendants approved on July 19, 2010. *See* Dkt. No. 42-1 at ¶¶ 51-53;

---

[6] The uncertainty regarding the mobile home's location was caused by the erroneous tax map number used on the violation appearance ticket.

Dkt. No. 42-23; Dkt. No. 42-24.


# III. DISCUSSION

## A.      Summary Judgment Standard

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether a genuine issue of material fact exists, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by

substituting convenience for facts").[7]

**B.     42 U.S.C. § 1983**

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976) (quoting 42 U.S.C. § 1983). In order to establish a claim under Section 1983, a plaintiff must establish that: "(1) the conduct complained of was committed by a person acting under color of state law; (2) that this conduct deprived the plaintiff of rights and privileges secured by the Constitution or laws of the United States; and (3) that the defendants' acts were the proximate cause of the injuries and consequent damages sustained by the plaintiff." *Brown v. Coughlin*, 758 F. Supp. 876, 881 (S.D.N.Y. 1991) (citing *Martinez v. California*, 444 U.S. 277 (1980)).

**C.     Ripeness**

As a jurisdictional prerequisite, a federal court may only entertain a plaintiff's claim if the claim is ripe for adjudication. *See Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005). In the context of land use disputes, a property owner's claim is not ripe for adjudication "until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985). "The ripeness requirement of *Williamson*, although announced in a takings context, has been

---

[7] As an initial matter, Defendants urge the Court not to consider Plaintiffs' opposition papers and to treat Defendants' motion for summary judgment as unopposed because Plaintiffs filed their response to the motion one day late. *See* Dkt. No. 47 at 4-5. In exercising its discretion, the Court will consider Plaintiff's response, but reminds Plaintiff's counsel of Local Rule 7.1(b)(3), which states that the Court will not consider any papers that are not timely filed unless good cause is shown. The Court further advises Plaintiff's counsel that it will not consider late filings in the future in the absence of good cause shown.

extended to equal protection and due process claims asserted in the context of land use challenges." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citations omitted).[8] "[A] non-final decision on how a parcel of land may be used does not ordinarily give rise to an injury that is sufficiently concrete and particularized to satisfy Article III (of the Constitution)." *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 122 (2d Cir. 2014).

In *Williamson*, the Supreme Court found that the plaintiff had not received a final decision where the plaintiff "did not . . . seek variances that would have allowed it to develop the property according to its proposed plat," despite the fact that the defendants had the power to grant such variances. *Williamson*, 473 U.S. at 188. The Second Circuit "has . . . interpreted *Williamson County* as 'condition[ing] federal review on a property owner submitting at least one meaningful application for a variance.'" *Sunrise Detox*, 769 F.3d at 124; *see also Murphy*, 402 F.3d at 342 (finding that the plaintiffs had not obtained a final decision from local authorities because they did not pursue an appeal or variance available to them under the applicable local law); *Dougherty*, 282 F.3d at 89 (concluding that the plaintiff had not received a final decision where he did not seek a variance that could have permitted his desired construction).

Nonetheless, "[t]he finality requirement is not mechanically applied," and "[a] property owner . . . will be excused from obtaining a final decision if pursuing an appeal to a zoning board of appeals or seeking a variance would be futile." *Murphy*, 402 F.3d at 349-50. Specifically, "a property owner need not pursue [an appeal to a zoning board of appeals or a variance] when a

---

[8] In *Williamson*, the Court also held that a land use dispute claim under the Just Compensation Clause is not ripe if the claimant "did not seek compensation through the procedures the State has provided for doing so." *Williamson*, 473 U.S. at 194 (footnote omitted). This "second prong" of the ripeness test is not implicated by land use claims that do not stem from the Just Compensation Clause. *Murphy*, 402 F.3d at 349.

zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied." *Id.* at 349. Although the "precise contours" of the futility exception are not well-defined, "courts in [the Second] Circuit have recognized that 'mere allegations of open hostility [are] not sufficient to invoke the futility exception.'" *Homefront Org., Inc. v. Motz*, 570 F. Supp. 2d 398, 408 (E.D.N.Y. 2008) (quoting *Goldfine v. Kelly*, 80 F. Supp. 2d 153, 161 (S.D.N.Y. 2000)). Furthermore, "[t]o invoke the futility exception, most courts require the filing of at least one 'meaningful application.'" *Goldfine*, 80 F. Supp. 2d at 159. "Informal efforts to gain approval for land development are insufficient, by themselves, to constitute final government action." *Id.* at 160.

Here, Defendants argue that Plaintiffs' claims are not ripe for adjudication because Defendants did not issue final decisions regarding Plaintiffs' desired uses of their properties. Defendants first argue that Plaintiffs did not receive final decisions because they did not file complete building permit applications. This fact is undisputed as to the Orlowski Plaintiffs, who admit that they were unable to obtain a warranty seal and therefore did not file a building permit application for their mobile home. *See* Dkt. No. 42-10 at 15-16. In the absence of an application requiring Defendants to approve or reject the Orlowski Plaintiffs' desired relocation of their mobile home, Defendants plainly did not make a final decision as to the Orlowski Plaintiffs.

Plaintiffs appear to argue that the Orlowski Plaintiffs' claim is nonetheless ripe for judicial review because seeking further review by Defendants would have been futile. *See* Dkt. No. 46 at 7 ("[P]laintiffs were effectively cornered by [D]efendant Salvatore, and placed in a position that prevented them from successfully seeking to overturn the actions he took."). However, Plaintiffs do not dispute that the Orlowski Plaintiffs did not file a single meaningful application for their desired development, which courts generally require for the futility exception to apply. *See*

*Goldfine*, 80 F. Supp. 2d at 159. Furthermore, Plaintiffs have introduced no evidence that Defendants "dug in [their] heels and made clear that all such applications [would] be denied." *Murphy*, 402 F.3d at 349. At best, the record establishes that Defendant Salvatore refused to approve a building permit application until the Orlowski Plaintiffs could obtain a warranty seal. The Orlowski Plaintiffs do not claim that Defendant Salvatore communicated or implied that he would refuse to issue them a building permit if they were successful in meeting the permit requirements. Therefore, Plaintiffs have not shown that seeking a final decision would have been futile. Accordingly, the Court grants Defendants' motion for summary judgment as to the Orlowski Plaintiffs' equal protection claim.[9]

As to the Norwood Plaintiffs, however, the fact of whether Plaintiffs filed complete building permit and floodplain development applications is disputed. Defendants contend – and Defendant Salvatore attested – that the Norwood Plaintiffs never paid the application fees and therefore Defendants did not consider their applications complete or requiring action. *See* Dkt. No. 42-14. Defendant Salvatore's attestations as to this point appear to depend not upon personal

---

[9] The fact that the Orlowksi Plaintiffs were not able to obtain a warranty seal and did not file a complete building permit application also defeats an essential element of the Orlowski Plaintiffs' "class of one" equal protection claim. A "class of one" equal protection claim requires a plaintiff to prove that (1) the plaintiff has been intentionally treated differently from others similarly situated and (2) there is no rational basis for the difference in treatment. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). As the Court discussed at length in its January 17, 2014 MDO, the level of similarity between the plaintiffs and the persons with whom they compare themselves must be extremely high, such that the plaintiffs and comparators are *prima facie* identical. *See* Dkt. No. 29 at 11-14. It is undisputed that Joel May obtained a warranty seal and filed a complete building permit application. Accordingly, the Orlowski Plaintiffs and Mr. May were not so similarly situated such that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)). Therefore, the Court would grant Defendants summary judgment on the Orlowski Plaintiffs' "class of one" equal protection claim even if the claim were ripe for adjudication.

memory regarding the fees, but rather upon the fact that "[s]uch [payment or receipt] would have been indicated by a notation at the bottom of the application that the fee was received by cash or check." *Id.* at ¶¶ 7, 9. The Norwood Plaintiffs' applications do not contain any such notation. *See* Dkt. No. 42-17; Dkt. No. 42-19. In comparison, Joel May's building permit application contains the notation "pd by cash 8/21/09", and his extension application contains the notation "pd by cash 7/16/10 M.K." Dkt. No. 42-21 at 1; Dkt. No. 42-23 at 1.

However, the Norwood Plaintiffs contend that they paid the application fees. *See* Dkt. No. 46 at 2. Defendants argue that this assertion, and Plaintiffs' opposition papers as a whole, are insufficient to create a genuine issue of fact because Plaintiffs did not submit supporting affidavits or other affirmative evidence. *See* Dkt. No. 47 at 5. Under Rule 56(c) of the Federal Rules of Civil Procedure,

> [a] party asserting that a fact . . . is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions . . . or other materials; or
> (B) showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). Thus, "the non-movant must support its assertion that a fact is genuinely in dispute by citing to specific materials in the record that are in admissible form." *E.E.O.C. v. Carolls Corp.*, 2011 WL 817516, *1 (N.D.N.Y. Mar. 2, 2011) (citing Fed. R. Civ. P. 56(c)(1)-(2)).

Plaintiffs supported their assertion that the Norwood Plaintiffs paid the building permit

and floodplain development application fees with citations to Douglas Norwood's deposition testimony. *See* Dkt. No. 42-8 at 21-22. Plaintiffs conceded that they cannot produce documentary proof that the Norwood Plaintiffs paid the application fees, *see* Dkt. No. 46 at 10, but such proof is not required. Rule 56(c) clearly states that a party asserting a genuine dispute of fact may support the assertion by reference to depositions in the record, as Plaintiffs did here. *See* Fed. R. Civ. P. 56(c)(1). Furthermore, in their reply to Plaintiffs' opposition to Defendants' first motion to dismiss Plaintiffs' complaint, Defendants asserted that "[i]t is indisputable that on November 24, 2008, Plaintiffs Norwood submitted a signed building permit application to the Town *and paid the required fee*." Dkt. No. 13-2 at 6 (emphasis added). In light of Defendants' own representations that the Norwood Plaintiffs paid the application permit fees, as well as Douglas Norwood's deposition testimony, the Court finds that there is a genuine factual issue as to the payment of the application fees.

Defendants next argue that even if the Norwood Plaintiffs submitted the proper application fees, Defendants did not issue a final decision denying the permit applications. *See* Dkt. No. 47 at 7. Plaintiffs contend that Defendant Salvatore verbally issued a final decision when he told Douglas Norwood that he would not receive a building permit. *See* Dkt. No. 46 at 2.[10] Specifically, Douglas Norwood indicated in his deposition testimony that Defendant Salvatore "told [Mr. Norwood] that [he] wasn't going to be able to get a permit to build," and "said that [Defendant Salvatore] didn't think he was going to give [Mr. Norwood] the permits to build." Dkt. No. 42-8 at 13, 17. Defendants assert that these statements do not satisfy the

---

[10] Plaintiffs also argue that Defendant Salvatore issued a final decision when he "directed certain prep work to be performed before he would accept a building permit application [from the Norwood Plaintiffs]." Dkt. No. 46 at 7. For the reasons discussed *supra* at note 1, the Court rejects this argument as unsupported by the record.

14

requirements of a stop work order under Town of Hancock Local Law #1 of 2007 ("Local Law #1"), which mandates that stop work orders issued by the Code Enforcement Officer must be in writing. *See* Town of Hancock, N.Y., Local Law #1 of 2007 § 6(b) (Jan. 2, 2007), *available at* Dkt. No. 42-15.

Although Defendant Salvatore's alleged statements to the Norwood Plaintiffs did not form a formal stop work order as contemplated by Local Law #1, Defendants introduced no evidence as to how they issue final denials of building permit applications. Local Law #1 does not address the denial of building permit applications. It simply states that "[t]he Code Enforcement Officer shall issue a building permit if the proposed work is in compliance with the applicable requirements of the Uniform Code and Energy Code." Local Law #1 § 4(f). Thus, while the parties agree that Defendants did not issue a formal, written denial of the Norwood Plaintiffs' applications, Defendants have proffered no evidence to suggest that Defendant Salvatore would have issued a final decision in such a manner. Additionally, Defendants previously suggested that Defendant Salvatore did in fact make a final decision regarding the Norwood Plaintiffs' permit applications: "[Local Law #1] gave . . . [Defendant] Salvatore[] broad discretion to review and *approve or disapprove this application. This is precisely what [Defendant] Salvatore did* after he received the completed building permit application on or about November 24, 2008." Dkt. No. 13-2 at 6 (emphasis added). Thus, drawing all reasonable inferences in Plaintiffs' favor as the non-moving party, the Court finds that Defendant Salvatore's statements constituted a final decision.

Defendants further argue that the Norwood Plaintiffs were required to "go to the Town Board to force a final decision," but offer no evidence that an appeal to the Town Board was available to Plaintiffs. Dkt. No. 47 at 8. Local Law #1 is silent as to the availability of

procedures for challenging the Code Enforcement Officer's decisions regarding building permit applications. Furthermore, it vests the determination as to whether a building permit will be issued solely with the Code Enforcement Officer. *See* Local Law #1 § 4. In the absence of any evidence in the record that the Town Board was authorized to hear appeals of Defendant Salvatore's building permit decisions, the Court cannot conclude that the Norwood Plaintiffs' claim is not ripe because they did not challenge Defendant Salvatore's decision before the Town. *Cf. Murphy*, 402 F.3d at 352 (holding that the plaintiff's claims were not ripe where the plaintiff did not appeal an order to a zoning board of appeals, which "possessed the authority to review the cease and desist order *de novo* to determine whether the zoning regulations were properly applied"); *Dougherty*, 282 F.3d at 88-89 (finding that the plaintiff's claim was not ripe because he did not apply for variance relief that was undisputably available to him); *Gottlieb v. Village of Irvington*, 69 F. Supp. 2d 553, 555-57 (S.D.N.Y. 1999) (concluding that the plaintiffs had not received a final determination because they did not seek approval for their development plans from the village planning board that "had final authority to approve all matters relating to subdivision plans").

Finally, Defendants argue that the Norwood Plaintiffs' claim is not ripe because they did not challenge Defendant Salvatore's decision in an Article 78 proceeding in state court. However, "[t]he question whether administrative remedies must be exhausted is conceptually distinct . . . from the question whether an administrative action must be final before it is judicially reviewable." *Williamson*, 473 U.S. at 192. Where "the State provides procedures by which an aggrieved property owner may seek a declaratory judgment regarding the validity of zoning and planning actions taken by [local] authorities, [a plaintiff will] not be required to resort to those procedures before bringing its § 1983 action, because those procedures clearly are remedial." *Id.*

at 193.  Likewise, a plaintiff is not required to appeal an agency's land use decision to an appellate body prior to bringing suit if the body is "empowered . . . to review that rejection, not to participate in the . . . decisionmaking."  *Id.*  As such, "the general rule [is] that § 1983 allows plaintiffs with federal or constitutional claims to sue in federal court without first exhausting state judicial or administrative remedies."  *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996) (citations omitted).  Therefore, the Norwood Plaintiffs were not required to pursue an Article 78 proceeding to obtain a final decision on their permit applications.

In light of Defendants' failure to identify a procedure available to the Norwood Plaintiffs for obtaining review of Defendant Salvatore's decision outside of an Article 78 proceeding, the Court denies Defendants' motion for summary judgment as to the Norwood Plaintiffs' substantive due process claim on ripeness grounds.

**D.      Substantive Due Process**

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. XIV.  The Due Process Clause contains both a procedural and substantive component.  *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  The substantive component "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'"  *Id.* (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

To state a substantive due process claim, a plaintiff must demonstrate that (1) he was deprived of "a valid 'property interest' in a benefit that was entitled to constitutional protection at the time [he] was deprived of that benefit," and (2) that the defendants' actions in depriving him

17

of that interest were "'so outrageously arbitrary as to be a gross abuse of governmental authority.'" *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 17 (2d Cir. 1999) (quoting *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999)); *see also Ferran v. Town of Nassau*, 471 F.3d 363, 369–70 (2d Cir. 2006) (holding that the plaintiff must establish that the government misconduct was "arbitrary," "conscience-shocking," or "oppressive in the constitutional sense," and not merely "incorrect or ill-advised" (internal quotation marks and citation omitted)). In the context of substantive due process claims arising out of land use regulation, the Second Circuit has instructed courts to be "mindful of the general proscription that federal courts should not become zoning boards of appeal to review nonconstitutional land[-]use determinations by the [C]ircuit's many local legislative and administrative agencies." *Lisa's Party City*, 185 F.3d at 17 (internal quotation marks and citation omitted).

"In order for an interest in a particular land-use benefit to qualify as a property interest for purposes of the substantive due process clause[,] a landowner must show a 'clear entitlement' to that benefit." *O'Mara v. Town of Wappinger*, 485 F.3d 693, 700 (2d Cir. 2007) (quoting *Clubside, Inc.*, 468 F.3d at 152). In other words,

> to establish a federally protectable property interest in a state or local permit for which a plaintiff has applied, the plaintiff must show that, at the time the permit was denied, there was no uncertainty regarding his entitlement to it under applicable state or local law, and the issuing authority had no discretion to withhold it in his particular case.

*Natale*, 170 F.3d at 263 n.1. The clear entitlement inquiry "'focuses on the extent to which the deciding authority may exercise discretion in arriving at a decision, rather than on an estimate of the probability that the authority will make a specific decision.'" *Clubside*, 468 F.3d at 153 (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 680 (2d Cir. 1995)) (emphasis omitted). "Usually, entitlement turns on whether the issuing authority lacks discretion to deny the permit,

i.e., is required to issue it upon ascertainment that certain objectively ascertainable criteria have been met." *Natale*, 170 F.3d at 263. The court's analysis of the plaintiff's property interest "therefore turns on the degree to which state and local law unambiguously limits the [defendants'] discretion to deny [the plaintiff's] petition." *Clubside*, 468 F.3d at 154.

To meet the second prong of the substantive due process analysis, a plaintiff must establish "that the conduct of the defendants in denying the permits was so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale*, 170 F.3d at 263. "Government regulation of a landowner's use of his property is deemed arbitrary or irrational, and thus violates his right to substantive due process, only when government acts with no legitimate reason for its decision." *Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 102 (2d Cir. 1992) (internal quotation marks and citation omitted). Therefore, "where the governmental entity has legitimate interests which could rationally be furthered through the complained-of action, a substantive due process claim must fail." *Lexjac, LLC v. Inc. Village of Muttontown*, 2011 WL 1059122, *7 (E.D.N.Y. Mar. 18, 2011) (citing *Harlen Assocs. v. Inc. Village of Mienola*, 273 F.3d 494, 505 (2d Cir. 2001)).

In the present matter, Defendants argue that the Norwood Plaintiffs cannot demonstrate a legitimate claim of entitlement to the building and floodplain development permits because their permit applications did not include the application fees and were thus incomplete. *See* Dkt. No. 42-29 at 17-18. As the Court discussed *supra*, the fact of whether the Norwood Plaintiffs paid the application fees is disputed. Defendants do not argue that Defendant Salvatore had discretion to deny the Norwood Plaintiffs' permit applications if the Norwood Plaintiffs did in fact pay the application fees, nor does Local Law #1 support such an argument. Local Law #1 directs that

> [a]n application for a Building Permit shall be examined to
> ascertain whether the proposed work is in compliance with the

> applicable requirements of the Uniform Code and Energy Code.
> The Code Enforcement Officer *shall* issue a Building Permit if the
> proposed work is in compliance with the applicable requirements of
> the Uniform Code and Energy Code.

Local Law #1 § 4(f) (emphasis added).

As the Court explained in its April 10, 2013 MDO,

> pursuant to Section 4(f), the [Code Enforcement Officer] is not
> vested with broad discretionary authority to grant or deny a permit
> or application. Section (f) clearly provides that a permit shall be
> issued if the proposed work is in compliance with the applicable
> codes. . . .
>
> > In cases where courts have found that the plaintiff does not
> possess a property interest in a permit, those cases involved
> distinguishable codes and regulations that provided the
> governmental body with broad discretion over whether a permit
> was granted. *See A.B.C. Home Furnishings, Inc. v. Town of East
> Hampton,* 947 F.Supp. 635, 645 (E.D.N.Y. 1996) (both the Town
> Code, and the permit application expressly provide that the permit
> "may" be revoked under certain circumstances and according to the
> permit application signed by the plaintiff, without notice or a
> hearing, providing the defendants with sufficient discretion in the
> determination as to whether to revoke a permit to defeat ABC's
> claim of a property interest); *see also Application/Action of 89 JPS,
> L.L.C. v. Joint Vill. of Lake Placid and Town of N. Elba Review Bd.,*
> 2011 WL 4344020, at *15 (N.D.N.Y. 2011) (pursuant to the Land
> Use Code at issue, the defendant had the discretion to "approve,
> approve with stipulated conditions, modification or disapprove any
> application" presented); . . . *Quick Cash of Westchester Ave. LLC v.
> Vill. of Port Chester,* 2013 WL 135216, at *11 (S.D.N.Y. 2013) (the
> plain language of the statute gives discretion to the mayor or local
> licensing authority to grant the license "as he shall deem proper,"
> and to limit licenses to those who meet the standard of "good
> character."). In this matter, Local Law #1 does not contain such
> broad discretionary language.

Dkt No. 15 at 15-16; *see also Walz v. Town of Smithtown*, 46 F.3d 162, 168 (2d Cir. 1995)

(finding that the plaintiffs were clearly entitled to a permit where the local code stated that "'a

permit shall be issued'" and only permitted the defendant to decline to issue a permit if the permit

application lacked required information); *Sullivan v. Town of Salem*, 805 F.2d 81, 85 (2d Cir.

1986) (concluding that a plaintiff had alleged a potential vested property interest in certificates of occupancy because once the plaintiff's houses were determined to conform with state and municipal requirements, "there was no element of discretion or judgment remaining for the building official to exercise in determining whether to issue the certificates"). As such, under the plain language of Local Law #1, the Norwood Plaintiffs were clearly entitled to building permits if their proposed work complied with the applicable provisions of the Uniform and Energy Codes.

The record is silent as to whether the Norwood Plaintiffs' proposed development in fact complied with the applicable statutory provisions.[11] Defendants attached the Norwood Plaintiffs' permit applications to their motion for summary judgment, but did not attach the applicable code provisions. Defendant Salvatore did not address the issue of compliance in his affidavit. Defendants do not argue that the Norwood Plaintiffs' proposed development violated the Uniform or Energy Code. In fact, when discussing the prep worked performed by the Norwood Plaintiffs, Defendants assert that

> the Norwood Plaintiffs do not dispute that their property was located within a flood zone, and submitted plans *consistent with the building requirements for said flood zone*. The subject 'prep work' was in conformance with the building permit application and the specifications in the FEMA Elevation Certificate, which was prepared and certified by the licensed land surveyor.

Dkt. No. 47 at 10-11 (citations omitted) (emphasis added). In the absence of any evidence that the Norwood Plaintiffs' proposed work did not comply with the applicable codes, the Court cannot conclude that the Norwood Plaintiffs did not have a vested property interest in the floodplain development and building permits as a matter of law.

---

[11] The Court apprised the parties of the need to develop the record as to this point in its April 10, 2013 MDO. *See* Dkt. No. 15 at 15-16 ("[T]he record does not contain any information relevant to the issue of whether [the] Norwood [P]laintiffs' application or proposed work complied with the Uniform or Energy Code.").

Defendants also argue that regardless of whether the Norwood Plaintiffs had a vested interest in the permits, Defendants' conduct was not so outrageously arbitrary as to constitute a violation of Plaintiffs' substantive due process rights. *See* Dkt. No. 47 at 10-11. However, the only reason Defendants have offered for the denial of permits to the Norwood Plaintiffs is the Norwood Plaintiffs' alleged failure to pay the application fees. Viewing the record in the light most favorable to Plaintiffs, and therefore assuming that the application fees were paid, Defendants have identified no legitimate reason for the denial of the permits. Notably, as discussed above, Defendants have not proffered any evidence that the Norwood Plaintiffs' planned construction was not in compliance with the requirements for building within the Special Flood Hazard Area. Sufficient issues of fact therefore exist as to whether Defendants had a legitimate reason for denying the Norwood Plaintiffs the permits they sought such that the Court cannot find, as a matter of law, that Defendants' conduct was not so outrageously arbitrary as to deprive the Norwood Plaintiffs of their substantive due process rights. As such, the Court denies Defendants' motion for summary judgment on the Norwood Plaintiffs' substantive due process claim.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED IN PART and DENIED** in part as follows; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** as to the Orlowski Plaintiffs' equal protection claim; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **DENIED** as to the Norwood Plaintiffs' substantive due process claim;[12] and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 13, 2015
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[12] The Norwood Plaintiffs' substantive due process claim is the only remaining cause of action in this matter.